OPINION
{¶ 1} Defendant-appellant, Quan R. Jordan, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court convicted appellant of one count of aggravated burglary, two counts of kidnapping, three counts of aggravated robbery, two counts of rape, and one count of attempted rape, all with firearm specifications and, pursuant to a jury trial, found appellant guilty of the sexually violent predator and repeat violent offender specifications attached to one of the rape counts.
 {¶ 2} On May 24, 2005, the Franklin County Grand Jury indicted appellant on the following counts involving offenses that took place on April 2, 2005, against two victims who are sisters (we will refer to the victims as "V1" and "V2"): Count 1, aggravated burglary, in violation of R.C. 2911.11; Count 2, kidnapping, in violation of R.C. 2905.01; Count 3, kidnapping, in violation of R.C. 2905.01; Count 4, aggravated robbery, in violation of R.C. 2911.01; Count 5, aggravated robbery, in violation of R.C. 2911.01; Count 6, rape, in violation of R.C.2907.02; Count 7, rape, in violation of R.C. 2907.02; Count 8, rape, in violation of R.C. 2907.02; Count 9, kidnapping, in violation of R.C. 2905.01; and Count 10, aggravated robbery, in violation of R.C. 2911.01. Each count contained a firearm specification pursuant to R.C. 2941.145. The rape count in Count 6 contained a sexually violent predator specification pursuant to R.C. 2941.148, and a repeat violent offender specification pursuant to R.C. 2941.149.
 {¶ 3} Appellant pled not guilty to the charges and specifications. Appellant waived his right to a jury trial on the sexually violent predator and repeat violent offender specifications in Count 6, and, instead, appellant opted to have the trial court determine his guilt on such specifications. A jury trial ensued on the criminal offenses and firearm specifications.
 {¶ 4} In its opening instructions, the trial court instructed the jury that, "[i]n the event you hear an answer to a question and I've sustained the objection to the question, disregard the question and the answer and don't consider either for any purpose whatsoever." (Vol. I Tr. at 13.) Next, during the trial, plaintiff-appellee, the State of Ohio, called V1 to testify, and she testified to the following. During the early morning hours of April 2, 2005, V1 and V2 were moving into an apartment. V1 was at her car retrieving items when a man, later identified as appellant, offered assistance. V1 declined. During the course of events, V1 opened the apartment door, which the victims had left unlocked, and V2 asked V1 to come upstairs. V1 went upstairs and saw appellant pointing a firearm at V2. Appellant indicated that he wanted $300 and that V2 stated that she did not have any money. V1 offered to write a check, but appellant refused. Rather, appellant wanted the victims to withdraw money at a bank machine from one of their bank accounts. Appellant stated that they would go to the bank machine in V1's vehicle.
 {¶ 5} Throughout the incident, V1 noticed that appellant "tried not to touch anything. If he had to touch something * * * he would * * * pull his coat to his hands and his fingers so that he doesn't leave prints. He actually said, I don't want to leave any prints behind." (Vol. I Tr. at 37-38.)
 {¶ 6} While riding to the bank machine, appellant stated that he had been in jail for 20 years for killing someone. At the bank machine, V1 asked if appellant would accept $200 so that she would have enough money for rent. Appellant agreed, but when he saw V1's bank transaction receipt, appellant became upset and stated that V1 had lied. Appellant then stated that they were going to go back to the victims' apartment to figure out how to get the balance of the money.
 {¶ 7} At the apartment, appellant told V2 to take a shower just as she had planned when he first arrived. V2 complied, and appellant then instructed V1 to take her clothes off, and appellant placed his firearm at V1's head. Appellant forced V1 to perform fellatio, and, during the sexual abuse, V1 spat "out onto the carpet." (Vol. I Tr. at 47.) Appellant then placed his fingers in V1's vagina, and appellant placed the tip of his penis in V1's vagina.
 {¶ 8} After V2 returned from the shower, appellant stated that they were going to return to the bank machine to get more money. Appellant stated that V1 was to drive her own vehicle and that appellant would drive V2 in his vehicle. At the bank machine, V1 withdrew $200. Next, appellant and V2 approached V1's vehicle, where appellant obtained the money and left the scene.
 {¶ 9} Subsequently, V1 drove to a gas station and called 911. Appellee played the 911 telephone call recording at trial, and the recording depicted V1 describing the events to which she had just testified. V1 also described appellant, noting that he had freckles on his face. While making the call, V1 stated that she saw appellant. However, V1 was mistaken.
 {¶ 10} V1 explained at trial why she thought she saw appellant at the gas station. According to V1, "I saw a black male kind of the same height approaching * * *. He was approaching the [gas station] and I thought it was him." (Vol. I Tr. at 71.) V1 further stated: "I was very emotional. * * * When the person came to the [gas station], I realized that it was not him." (Vol. I Tr. at 71.)
 {¶ 11} Next, V1 testified to the following. Law enforcement took V1 to the hospital, and hospital personnel collected evidence for a rape kit. Afterwards, Columbus Police Detective Kim Foster asked V1 to identify appellant in a photo array. However, V1 could not identify appellant in the photo array. V1 explained at trial, "[a]ll I knew is [appellant] had some freckles on his face. But in the pictures I could not see the freckles on anybody's face. So what I was looking for was the freckles, which I didn't see in the pictures." (Vol. I Tr. at 82.) However, at trial, V1 positively identified appellant as the man who committed the above-described offenses.
 {¶ 12} Nurse Janet Baatz examined V1 at the hospital after the sexual abuse. Nurse Baatz testified that, when she collected physical evidence from V1's mouth, "there's a chance [she] would [have] miss[ed]" physical evidence that appellant left in V1's mouth, "[b]ut typically" if such evidence is in a victim's mouth, she would obtain it. (Vol. I Tr. at 149.)
 {¶ 13} V2 testified to the following on appellee's behalf. During the evening of April 1, 2005, V2 and V1 were moving into an apartment. At the early morning hours of April 2, 2005, V2 decided to take a shower while V1 finished bringing a few more items into the apartment. While V2 entered the shower, she saw a man, later identified as appellant, move toward her with a firearm. Appellant put the firearm to V2's head. Appellant stated that he needed money, but V2 responded that she did not have any money. Appellant then told V2 to have V1 come into the apartment. V2 called for V1.
 {¶ 14} When V1 came into the apartment, appellant stated that they were going to a bank machine and were going to drive in V1's vehicle. At the bank machine, V1 asked if appellant would accept $200 so that she would have enough money for rent. Appellant agreed to accept $200, but, when appellant saw V1's transaction receipt, he became upset and stated that V1 had lied. Appellant then stated that they were going to go back to the victims' apartment to figure out how to get the balance of the money.
 {¶ 15} At the victims' apartment, appellant told the victims that he was a criminal. He then told V2 to take a shower, just as she had planned when appellant first arrived. V2 took a very brief shower and then saw appellant and V1 in the living room. Appellant was penetrating V1 with his penis. V2 then started yelling. Thereafter, appellant stated that they were going back to the bank machine. V1 drove her vehicle, and appellant drove V2 in his vehicle. While driving to the bank machine, appellant talked about his life in jail and stated that he did not care if he went back to jail. At the bank machine, appellant and V2 exited his vehicle. Appellant obtained the money from V1, and left the scene.
 {¶ 16} Next, the victims went to a gas station, and V1 called 911. Subsequently, V2 identified appellant in a photo array. Lastly, at trial, V2 testified that the photo array depicted appellant with freckles on his face.
 {¶ 17} Detective Foster testified on behalf of appellee that, after law enforcement determined that appellant committed the above-noted offenses, warrants for appellant were filed and appellant's parole officer was contacted. Appellant's trial counsel objected to such testimony, the trial court sustained the objection, and the following exchange took place:
[THE COURT]: Just go ahead and ask another question.
[APPELLEE]: Let me ask you this: At any time did you —
[APPELLANT'S TRIAL COUNSEL]: Your Honor, may we approach?
* * *
[APPELLANT'S TRIAL COUNSEL]: This is a seasoned detective, said he was on parole * * * which means he's been to prison, saying he's been to prison. Now they know he's been to prison. That's grounds for a mistrial.
[THE COURT]: Motion will be overruled.
I will be happy to instruct the jury with respect to the last comment.
[APPELLANT'S TRIAL COUNSEL]: The comment has been made and I think the impact is almost impossible —
[THE COURT]: Do you want me to instruct the jury further to disregard the last comment?
[APPELLANT'S TRIAL COUNSEL]: Yeah.
(Vol. II Tr. at 242-243.) Thus, the trial court instructed the jury: "I did sustain the objection to the last question. The jury is to disregard her last comment." (Vol. II Tr. at 243-244.)
 {¶ 18} On cross-examination, Detective Foster admitted that physical evidence taken from the victims' apartment did not link to appellant. Detective Foster also admitted that the physical evidence from V1 for the rape kit did not link to appellant.
 {¶ 19} Before deliberations, the trial court dismissed the kidnapping charge in Count 9 and allowed the jury to deliberate on one kidnapping charge for V1 in Count 3 and another kidnapping charge for V2 in Count 2. As to the kidnapping charge in Count 2 pertaining to V2, the parties stipulated that appellant released V2 in a safe place unharmed, thereby making the count a second-degree felony instead of a first-degree felony pursuant to R.C. 2905.01(C).
 {¶ 20} After deliberations, the jury found appellant guilty on the remaining charges and firearm specifications. The trial court found appellant guilty on the sexually violent predator and repeat violent offender specifications in Count 6.
 {¶ 21} On November 23, 2005, the trial court later held a sentencing hearing and sentenced appellant to maximum and consecutive prison sentences. In particular, at the sentencing hearing, the trial court sentenced appellant to ten years imprisonment on the kidnapping charge in Count 2, even though the maximum prison term for the second-degree felony is eight years. See R.C. 2929.14(A)(2). The trial court also stated: "The sentences on Count One, Two and Three are going to run consecutive. Counts Four, Five and Ten are going to run concurrent with each other but consecutive with the other sentences." (Vol. III Tr. at 8.) Additionally, the trial court imposed 20 years imprisonment on the repeat violent offender specification after making particular findings under R.C.2929.14(D)(2)(b).
 {¶ 22} Subsequently, the trial court journalized its sentence in a judgment entry, wherein the trial court reiterated that it sentenced appellant to ten years for kidnapping in Count 6, and the trial court referred to the kidnapping offense in Count 6 as a first-degree felony. The trial court also stated in the judgment entry that appellant was to serve the prison sentence for Count 6 consecutive to the other counts, and appellant was to serve the sentences in Counts 7 and 8 concurrently with each other, but consecutive to Counts 1, 2, 3, 4, 5, and 10.
 {¶ 23} Appellant appeals, raising four assignments of error:
ASSIGNMENT OF ERROR I
Mr. Jordan's convictions are against the manifest weight of the evidence.
ASSIGNMENT OF ERROR II
The trial court abused its discretion in failing to declare a mistrial after a State's witness revealed to the jury that Mr. Jordan was a convicted criminal.
ASSIGNMENT OF ERROR III
The trial court committed plain error in convicting Mr. Jordan of felony-one kidnapping on count two, when counsel stipulated that the victim was released in a safe place, unharmed.
ASSIGNMENT OF ERROR IV
The trial court erred in imposing statutory maximum and consecutive terms of imprisonment, in violation of Blakely v.Washington and State v. Foster.
 {¶ 24} In his first assignment of error, appellant contends that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 25} In determining whether a verdict is against the manifest of the evidence, we sit as a "thirteenth juror." Statev. Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown,
Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quotingState v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 26} In arguing that his convictions are against the manifest weight of the evidence, appellant emphasizes that law enforcement found no physical evidence linking to appellant at the victims' apartment. Appellant also notes that evidence from the rape kit performed on V1 did not link appellant to the sexual abuse. However, the lack of physical evidence from appellant at the victims' apartment is due, in part, by appellant trying not to touch items in the apartment. Likewise, in regards to the rape kit not linking appellant to the sexual abuse, Nurse Baatz testified that, when she collected physical evidence from V1's mouth, "there's a chance [she] would [have] miss[ed]" physical evidence that appellant left in V1's mouth. (Vol. I Tr. at 149.)
 {¶ 27} Moreover, the prosecution can establish proof of guilt through circumstantial evidence as well as through physical evidence and direct or testimonial evidence; all three classes have equal probative value. State v. Nicely (1988),39 Ohio St.3d 147, 151; In re Grigson (Apr. 15, 1991), Scioto App. No. 1881. Here, the victims' testimonial evidence unequivocally established that appellant committed the above-noted offenses. Both victims described how appellant was in their apartment and ordered them, at gunpoint, to drive to a bank for money. Both victims described how appellant forced them to return to the apartment where he sexually abused V1 at gunpoint. Both victims also described how appellant then ordered them to return to the bank for more money before he released them and left the scene. In addition, in the 911 recording, V1 described the events similarly as she did at trial.
 {¶ 28} In so concluding, we further reject appellant's contention that his convictions are against the manifest weight of the evidence because V1 could not identify appellant in the initial photo array and because V1 mistakenly thought that she saw appellant while she made the 911 telephone call. V1 provided a reasonable explanation as to why she could not identify appellant in the photo array. Specifically, V1 explained that appellant had freckles, as she noted on the 911 telephone call and as V2 confirmed. V1 then explained that, when she saw the photo array, she could not see appellant's freckles in the photographs and, therefore, she made no identification. V1 also provided a reasonable explanation as to why she mistakenly thought that she saw appellant while she made the 911 telephone call. Specifically, V1 indicated that she was "very emotional" at the time and that she "saw a black male kind of the same height" as appellant approach the gas station, but when the person came to the gas station, she realized the person was not appellant. (Vol. I Tr. at 71.) Lastly, we emphasize that V1 undeniably identified appellant at trial.
 {¶ 29} Thus, based on the above, we conclude that appellant's convictions are not against the manifest weight of the evidence. As such, we overrule appellant's first assignment of error.
 {¶ 30} In his second assignment of error, appellant contends that the trial court abused its discretion when it denied appellant's motion for a mistrial after Detective Foster testified that law enforcement contacted appellant's parole officer. We disagree.
 {¶ 31} A mistrial need not be ordered in a criminal case merely because some error or irregularity has intervened. Statev. Nichols (1993), 85 Ohio App.3d 65, 69. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127. Ultimately, the decision whether to declare a mistrial is within the sound discretion of the trial court.State v. Garner (1995), 74 Ohio St.3d 49, 59. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 32} In support of his argument that the trial court abused its discretion in denying appellant's mistrial motion, appellant contends that Detective Foster's statement about appellant having a parole officer inappropriately confirmed that appellant had a criminal record. In general, evidence of an individual's other criminal acts, which are independent from the offense for which the individual is on trial, is inadmissible in a criminal trial.State v. Wilkinson (1980), 64 Ohio St.2d 308, 314; Evid.R. 404(B). In this regard, the trial court sustained appellant's objection after Detective Foster referenced appellant's parole officer. However, the trial court refused to declare a mistrial, but, instead, issued a curative instruction.
 {¶ 33} In State v. Mobley (Apr. 5, 2002), Montgomery App. No. 18878, the Second District Court of Appeals concluded that a trial court did not abuse its discretion in denying a defendant's motion for mistrial after a prosecution witness testified to the defendant's arrest on a previous crime. The appellate court noted that the trial court sustained an objection to the reference and gave a curative instruction that admonished the jury to disregard the reference and not use it during deliberations. Thus, in upholding the trial court's decision to deny the defendant's mistrial motion, the appellate court concluded that the trial court's above-noted instruction successfully cured error that stemmed from the witness' reference to the defendant's arrest on a previous crime.
 {¶ 34} In State v. Warren (1990), 67 Ohio App.3d 789,798-799, the Sixth District Court of Appeals upheld a trial court's decision to deny a defendant's motion for mistrial after a prosecution witness testified to the defendant having a parole officer. The appellate court concluded that a mistrial was not necessary because the trial court immediately issued a curative instruction. Id. at 799.
 {¶ 35} Here, like Mobley and Warren, the trial court gave a curative instruction after Detective Foster testified to appellant having a parole officer. We find that the instruction effectively cured error stemming from Detective Foster's testimony, initially noting that we presume that jurors follow the trial court's instructions. State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 39. In addition, like Mobley andWarren, the trial court gave the curative instruction soon after the jury heard the testimony, and we note that the curative instruction tied in with and underscored the trial court's opening instruction that, "[i]n the event you hear an answer to a question and I've sustained the objection to the question, disregard the question and the answer and don't consider either for any purpose whatsoever." (Vol. I Tr. at 13.) Consequently, like Mobley and Warren, we conclude that the trial court was not required to grant appellant's motion for mistrial because the trial court effectively cured error from Detective Foster's testimony through the instruction.
 {¶ 36} In so concluding, we reject appellant's contention that the trial court's instruction was vague and ineffective because it did not specify the comment to be disregarded. The record establishes that the trial court's curative instruction sufficiently referenced Detective Foster's testimony that appellant had a parole officer. Specifically, the detective provided no additional testimony before the trial court gave the instruction, and the trial court issued the instruction in the context of having sustained appellant's objection to Detective Foster testifying that appellant had a parole officer.
 {¶ 37} Therefore, based on the above, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. As such, we overrule appellant's second assignment of error.
 {¶ 38} We next address appellant's fourth assignment of error, wherein appellant contends that the trial court erred by sentencing appellant to maximum and consecutive prison sentences. In particular, appellant asserts that the trial court imposed the maximum and consecutive sentences in violation of jury trial principles afforded by the Sixth Amendment to the United States Constitution and in contravention of Blakely v. Washington
(2004), 542 U.S. 296, and State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856.
 {¶ 39} Blakely stems from Apprendi v. New Jersey (2000),530 U.S. 466, 490, wherein the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Otherwise, the sentence violates a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution and Fourteenth Amendment due process guarantees. Apprendi at 476-478, 497. In Blakely, the United States Supreme Court defined "`statutory maximum' forApprendi purposes" as "the maximum sentence a judge may imposesolely on the basis of the facts reflected in the jury verdictor admitted by the defendant." (Emphasis sic.) Blakely at 303.
 {¶ 40} Since appellant's sentencing, the Ohio Supreme Court decided the applicability of Blakely to Ohio's felony sentencing laws in Foster. In Foster, the Ohio Supreme Court concluded that portions of Ohio's felony sentencing statues violate the Sixth Amendment to the United States Constitution in the manner set forth in Blakely. Foster at ¶ 50-83. In particular, the Ohio Supreme Court declared unconstitutional the statutes involved in appellant's case, R.C. 2929.14(C) and2929.14(E)(4), which are statutes governing a trial court's imposition of maximum and consecutive sentences, respectively. See Foster at ¶ 83. Thus, in Foster, the Ohio Supreme Court severed the unconstitutional statutes from Ohio's felony sentencing laws. Id. at ¶ 99. The Ohio Supreme Court then concluded that cases pending on direct review "must be remanded to trial courts for new sentencing hearings[.]" Id. at ¶ 104.
 {¶ 41} In State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, at ¶ 7, we acknowledged the "broad language the Supreme Court of Ohio used in Foster when it ordered resentencing for all cases pending on direct review." However, we concluded that "a defendant who did not assert a Blakely
challenge in the trial court waives that challenge and is not entitled to a resentencing hearing based on Foster." Id. In concluding as such, we "consider[ed] the language used in UnitedStates v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738, the case that Foster relied on in arriving at" its decision to sever the unconstitutional statutes from Ohio's felony sentencing laws.Draughon at ¶ 7. "In Booker, the United States Supreme Court applied Blakely to the Federal Sentencing Guidelines. TheBooker Court applied its holding to all cases on direct review." Id. However, the Booker court "expected reviewing courts to apply `ordinary prudential doctrines,' such as waiver * * * to determine whether to remand a case for a new sentencing." Id., quoting Booker at 268. "Thus, in accordance with the well-settled doctrine of waiver of constitutional challenges, and the language in Booker," we held in Draughon that a "Blakely challenge is waived by a defendant sentenced afterBlakely if it was not raised in the trial court." Draughon at ¶ 8; see, also, Washington v. Recuenco (2006), ___ U.S. ___,126 S.Ct. 2546 (holding that constitutional error under Blakely
does not provide for automatic reversal).
 {¶ 42} Here, the trial court sentenced appellant after the United States Supreme Court issued Blakely. Thus, appellant could have objected to his maximum and consecutive prison sentences based on Blakely and the constitutionality of Ohio's sentencing scheme. Appellant did not do so. Therefore, pursuant to Draughon, we conclude that appellant waived his Blakely
argument on appeal in regards to his maximum and consecutive prison sentences and is not entitled to a resentencing hearing based on Foster. See Draughon at ¶ 7.
 {¶ 43} In his reply brief, appellant argues that the trial court imposed a sentence under R.C. 2929.14(D)(2)(b) on the repeat violent offender specification in violation of jury trial principles afforded by the Sixth Amendment to the United States Constitution and in contravention of Blakely and Foster. InFoster, the Ohio Supreme Court declared R.C. 2929.14(D)(2)(b) unconstitutional under Blakely and severed the statute from Ohio's felony sentencing laws. Foster at ¶ 83, 99.
 {¶ 44} However, appellant raised the repeat violent offender sentencing issue for the first time in his reply brief, even though the reply brief merely affords an appellant "an opportunity to reply to the brief of the appellee." See Sheppardv. Mack (1980), 68 Ohio App.2d 95, 97, fn. 1. Regardless, for the reasons noted above, we conclude that appellant also waived the Blakely argument on appeal in regards to his repeat violent offender specification sentence and is not entitled to a resentencing hearing based on Foster. See Draughon at ¶ 7. Therefore, we overrule appellant's fourth assignment of error.
 {¶ 45} Within his fourth assignment of error, appellant also contends that the trial court issued a judgment entry that does not comport with the sentence pronounced at the sentencing hearing in appellant's presence. While App.R. 12(A)(2) permits us to disregard the sentencing discrepancy issue because it was not argued under a separate assignment of error, we note that appellee has not objected to appellant raising the issue, and, in the interest of justice, we shall address the issue in conjunction with appellant's third assignment of error, which, in part, also concerns discrepancies in the trial court's sentencing. See State v. Peagler (1996), 76 Ohio St.3d 496, 499
(recognizing an appellate court's authority under App.R. 12[A][2] to address or disregard issues that an appellant has not properly briefed or assigned); State v. Newcomb, Franklin App. No. 04AP-1223, 2005-Ohio-4570, at ¶ 29.
 {¶ 46} In his third assignment of error, appellant contends that the trial court committed plain error in convicting and sentencing appellant for first-degree felony kidnapping in Count 2. According to appellant, the kidnapping offense in Count 2 constitutes a second-degree felony under R.C. 2905.01(C) because the parties stipulated that V2 was released in a safe place, unharmed. Appellee concedes that the trial court committed plain error by convicting and sentencing appellant for first-degree, instead of second-degree, felony kidnapping in Count 2, and we agree that the conviction and sentence on Count 2 cannot stand.
 {¶ 47} Next, as explained above, we address in appellant's third assignment of error his contention that the trial court erroneously issued a judgment entry that does not comport with the sentence pronounced at the sentencing hearing. In particular, according to appellant, the trial court issued a judgment entry that indicated appellant was to serve the prison sentence for Count 6 consecutive to the other counts, and appellant was to serve the sentences in Counts 7 and 8 concurrently with each other but consecutive to Counts 1, 2, 3, 4, 5, and 10. However, as appellant notes and appellee concedes, the trial court made no such pronouncements at the sentencing hearing.
 {¶ 48} Pursuant to Crim.R. 43(A), a defendant must be present at "the imposition of sentence[.]" Thus, we have previously held that a trial court errs when it issues a judgment entry that imposes a sentence that differs from the sentence the trial court announced at a sentencing hearing in the defendant's presence.State v. Aliane, Franklin App. No. 03AP-840, 2004-Ohio-3730, at ¶ 8; State v. Jones (Mar. 18, 1999), Franklin App. No. 98AP-639. Such error requires a remand for resentencing. Id.
 {¶ 49} Here, the trial court's judgment entry pronounced consecutive sentences on certain counts even though the trial court made no such indications in appellant's presence during the sentencing hearing. Thus, pursuant to Jones, appellant is entitled to be present at a new sentencing hearing in regards to such sentencing matters. Obviously, as appellant suggests, due process of law requires that vindictiveness against a defendant who successfully attacks an earlier conviction or sentence must play no part in the sentence he or she receives on a remanded matter. See North Carolina v. Pearce (1969), 395 U.S. 711, 725, overruled on other grounds by Alabama v. Smith (1989),490 U.S. 794. However, aside from such conditions, the trial court need not impose the "sentence originally stated in open court" in regards to the sentences under review here. Jones.
 {¶ 50} We emphasize that our holding in appellant's third assignment of error only applies to appellant's conviction and sentence in Count 2 and to portions of the trial court's judgment entry that ordered appellant to serve the prison sentence for Count 6 consecutive to the other counts and that ordered appellant to serve the sentences in Counts 7 and 8 concurrently with each other, but consecutive to Counts 1, 2, 3, 4, 5, and 10. Thus, while the trial court must rectify the specific sentencing errors noted in the third assignment of error, the trial court has no authority to modify other aspects of appellant's sentences that were not subject to the assignment of error. See State v.Saxon, 109 Ohio St.3d 176, 2006-Ohio-1246, at ¶ 10, 11, 19, 30. Having concluded as above, we sustain appellant's third assignment of error.
 {¶ 51} In summary, we overrule appellant's first, second, and fourth assignments of error, but we sustain appellant's third assignment of error. As such, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this cause to the trial court for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
Klatt, P.J., and Travis, J., concur.