[Cite as *State v. Jackson*, 2014-Ohio-5008.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :        APPEAL NO. C-140178
                                           TRIAL NO. B-1203284-B
      Plaintiff-Appellee,       :

  vs.                             :

TANGIE JACKSON,                   :        *O P I N I O N.*

      Defendant-Appellant.      :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 12, 2014


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Tangie Jackson appeals her convictions stemming from an incident at her home where her then six-year-old son shot her seven-year-old daughter while the two had been playing, unsupervised, and from Jackson's subsequent actions in covering up the incident. Three of Jackson's assignments of error pertain to her conviction for tampering with evidence and the accompanying firearm specification. Finding no merit in those assignments, we affirm the trial court's judgment as to that count. We do find merit, however, in Jackson's final assignment of error as to the sentence imposed on her charge for obstructing official business, and we remand the matter to the trial court to enter a nunc pro tunc entry to correct the sentencing entry to reflect the sentence announced at the sentencing hearing.

### Facts and Procedural History

{¶2} Jackson and her boyfriend, Ricky Singleton, lived together in Jackson's apartment with Jackson's three children and her newborn fathered by Singleton. On the afternoon of May 10, 2012, Jackson's six-year-old son and her seven-year-old daughter were playing in Jackson's bedroom. Jackson and Singleton were in another room. Jackson and Singleton heard a gunshot in the bedroom, and they discovered that the seven-year-old had been shot in her middle-back area by the six-year-old.

{¶3} Jackson directed Singleton to "do something" with the gun and to "keep it where I know where the f*** it's at because I am going call the motherf***ing police—because this shit is dangerous—I'm scared as f***." Instead of immediately calling 911, Jackson and Singleton discussed their next steps. Singleton suggested

that he go outside the home and shoot through a window, making it appear as if a drive-by shooting had occurred. Jackson vetoed that idea. The two then decided that they would take all of the children on a walk to the store and call police with the story that the girl had been hit by a bullet while walking. Jackson cleaned the entrance wound on her daughter's back, and they proceeded with their plan.

{¶4} Jackson and the others walked nearly a mile away from home, and then Singleton called 911. Detective Savard responded to Singleton's 911 call. Singleton told Detective Savard that he, Jackson, and the children had been walking to the store when they heard a gunshot, and they realized that the young girl had been shot. Detective Savard called for paramedics, and she rode in the ambulance, along with Jackson, to Children's Hospital. Singleton and the other children stayed behind with other police officers.

{¶5} Although Singleton and Jackson had coached the children to lie to police, Detective Savard became suspicious because the children's stories were inconsistent. Moreover, police officers at the scene of the supposed drive-by could not find any sign of a shooting, and none of the neighbors reported hearing gunshots. At the hospital, Detective Savard read Jackson her *Miranda* rights and began questioning her regarding the shooting. Jackson initially reiterated the concocted story, but when confronted, Jackson admitted to what had actually transpired. Jackson claimed that the gun belonged to Singleton, and that she had told Singleton not to bring the gun in her home. She also claimed that she did not know what Singleton did with the gun after the shooting.

{¶6} Detective Sellers obtained a search warrant for Jackson's apartment and conducted a search. In Jackson's bedroom, Detective Sellers found gunshot

residue on the middle of a mattress. He then used a flashlight to uncover a handgun partially hidden in a filled cardboard box in the bedroom closet.

{¶7} Jackson and Singleton were indicted for felony child endangering accompanied by a firearm specification, tampering with evidence for wiping the blood from the young girl's wound, and tampering with evidence for concealing the gun, which was accompanied by a firearm specification. The two were also indicted for obstructing official business, and two counts of intimidation of a crime victim or witness. Singleton was also charged with having a weapon while under a disability. Although Singleton pleaded guilty, Jackson pleaded not guilty, and the matter proceeded to a bench trial in the Hamilton County Court of Common Pleas.

{¶8} At trial, the state introduced the testimony of Detective Savard and Detective Sellers, as well as the taped interviews of Jackson, which occurred at Children's Hospital. Jackson then moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court granted Jackson's motion in part by amending the felony child-endangering count to a first-degree misdemeanor and dismissing the firearm specification accompanying that charge. The trial court also dismissed the tampering-with-evidence count as to the removal of blood from the child's wound, and dismissed the two intimidation counts. Jackson withdrew the only testimony she had offered in her defense, and the defense rested.

{¶9} The trial court found Jackson guilty of the remaining charges: misdemeanor child endangering in count 1; tampering with evidence, accompanied by a firearm specification in count 2; and obstructing official business in count 4. The trial court imposed a total sentence of one year and nine months in the department of corrections. Jackson appeals her convictions in counts 2 and 4.

**Corpus-Delecti Rule**

{¶10} Jackson's first and third assignments of error relate to the corpus-delecti rule. Jackson argues in her first assignment of error that the trial court erred by admitting her taped statements at trial without any prior evidence of the corpus delecti of the crime of tampering with evidence. Because Jackson failed to object to the admission of her statements at trial, however, she has waived all but plain error. *See* Crim.R. 52(B).

{¶11} As a general matter, before a defendant's confession can be admitted, some evidence must exist apart from the confession to demonstrate the "corpus delecti" of a crime, meaning the body of the crime. *State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916), paragraphs one and two of the syllabus. To satisfy the corpus-delecti rule, the state need only present circumstantial evidence tending "to prove the fact that a crime was committed." *State v. Fuller*, 12th Dist. Butler Nos. CA2000-11-217, CA2001-03-048 and CA2001-03-061, 2002-Ohio-4110, ¶ 38, citing *Maranda* at 370.

{¶12} The crime of tampering with evidence prohibits a person who knows "that an official proceeding or investigation is in progress, or is about to be or likely to be instituted" from altering, destroying, concealing, or removing an object "with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1). In Jackson's case, the state presented evidence that Jackson knew that her daughter had been shot with a gun inside her home, and that Jackson and Singleton represented to police that her daughter had been shot in a drive-by shooting. The police found gun residue on Jackson's bed in her bedroom and found a gun partially hidden from view in a box inside Jackson's bedroom closet.

This evidence tends to prove that the crime of tampering with evidence was committed, such that the trial court did not violate the corpus-delecti rule in admitting Jackson's statements. Therefore, we overrule Jackson's first assignment of error.

{¶13} In Jackson's third assignment of error, she contends that she was denied the effective assistance of counsel because counsel failed to raise a corpus-delecti objection prior to the admission of her confession as to the tampering-with-evidence charge. As previously discussed, the corpus-delecti rule was satisfied, and, therefore, Jackson's counsel did not render ineffective assistance by failing to raise an objection on that basis. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, we overrule Jackson's third assignment of error.

## Sufficient Evidence for Tampering with Evidence

{¶14} In her second assignment of error, Jackson argues that the trial court erred by convicting her of tampering with evidence and the accompanying firearm specification, which we construe as a challenge to the sufficiency of the evidence supporting her convictions.

{¶15} Tampering with evidence under R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *See State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 21 (9th Dist.); R.C. 2901.22(A). Purpose is generally shown by circumstantial evidence. *State v. Rose*, 1st Dist. Warren No. 382, 1980 Ohio App. LEXIS 10167 (Aug. 27, 1980). Moreover, a defendant's failure to pursue a more successful form of concealment has no effect on a sufficiency-of-the-evidence analysis. *See State v. Rock*, 10th Dist. Franklin No. 13-13-38, 2014-Ohio-1786, ¶ 22.

{¶16} Jackson contends that her directive to Singleton to "do something" with the gun before she called police was ambiguous, and that when considered with her statement to keep the gun where she could find it, Jackson could have meant that Singleton needed to keep the gun away from her and her children. Jackson also argues that the state failed to prove that the gun was concealed, because it was in plain view in the closet.

{¶17} The evidence showed that Jackson and Singleton instituted a cover-up in an attempt to mislead police after Jackson's daughter had been shot. When the truth surfaced that Jackson's daughter had been shot in Jackson's bedroom, the police found the gun by executing a search warrant and using a flashlight to uncover the partially-hidden gun from a filled box in Jackson's bedroom closet. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have determined that Jackson's statement to Singleton to "do something" with the gun after her daughter had been shot was in furtherance of her plan to thwart a law-enforcement investigation, and not a safety measure. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Moreover, the gun was not in plain view as Jackson contends, and just because the gun could have been better hidden does not negate concealment. *See Rock* at ¶ 22. Therefore, the evidence adduced at trial was sufficient to support the tampering-with-evidence charge. *See Jenks.*

{¶18} With regard to the firearm specification, the state had to prove that, as to the tampering-with-evidence charge, Jackson had a firearm "on or about her person or under her control" in violation of R.C. 2941.141. The state need not prove that a defendant actually possessed a firearm to satisfy R.C. 2941.141, constructive

possession is sufficient. *State v. Easterly*, 8th Dist. Cuyahoga No. 94797, 2011-Ohio-215, ¶ 24.

{¶19} Jackson argues that she never had control of the gun, which belonged to Singleton, because she never saw or touched the gun. But, the law does not require Jackson to actually possess the gun to be guilty of a firearm specification. *See Easterly*. Assuming, as Jackson alleges, that she never saw the gun, the gun was found in her bedroom closet, and she at least knew that a gun was used in her bedroom to shoot her daughter. Instead of calling for assistance and preserving the area for law enforcement, Jackson directed Singleton to "do something" with the gun, and the two hatched a plan to cover up the shooting. Viewing this evidence in a light most favorable to the state, a rational trier of fact could have found Jackson guilty of the firearm specification accompanying the tampering-with-evidence charge. *See Jenks*.

{¶20} We overrule Jackson's third assignment of error.

### Nunc Pro Tunc Entry Correcting Count 4

{¶21} In her fourth assignment of error, Jackson argues that the trial court erred by entering a sentence on obstructing official business that is contrary to law. On the record at the sentencing hearing, the trial court orally sentenced Jackson to eight months in the department of corrections on the obstructing-official-business charge, count 4. However, in its sentencing entry, the trial court sentenced Jackson to nine months in prison.

{¶22} Crim.R. 43 requires the defendant's presence at every stage of trial, including the imposition of sentence. Crim.R. 43(A)(1). Thus, a trial court's sentence is contrary to law when it imposes a sentence in the sentencing entry

different from the sentence announced at the sentencing hearing. *State v. Railey*, 1st Dist. Hamilton No. C-120029, 2012-Ohio-4233, ¶ 21; *State v. Jordan*, 10th Dist. Franklin No. 05AP-1330, 2006-Ohio-5208, ¶ 48.

{¶23} Because the trial court imposed a sentence in count 4 different from that announced in Jackson's presence at the sentencing hearing, we sustain Jackson's fourth assignment of error to the extent that we determine the trial court should have imposed in its sentencing entry an eight-month term on count 4, consistent with the term orally pronounced at the sentencing hearing.

## Conclusion

{¶24} In conclusion, the judgment of the trial court is reversed in part, and the cause is remanded solely for the entry of a nunc pro tunc sentencing order reflecting that Jackson's sentence on count 4, obstructing official business, is eight months in the department of corrections. We affirm the remainder of the trial court's judgment.

Judgment affirmed in part, reversed in part, and cause remanded.

CUNNINGHAM, P.J., and DEWINE, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.