[Cite as *State v. Slone*, 2011-Ohio-2016.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25130 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BROOKS SLONE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 02 0541 (A) |

DECISION AND JOURNAL ENTRY

Dated: April 27, 2011

MOORE, Judge.

{¶1}    Appellant, Brooks Slone, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms the trial court's judgment.

I.

{¶2}    Brooks Slone was indicted on six counts related to various drug offenses, including Aggravated Possession of Drugs (mushrooms), in violation of R.C. 2925.11(A)(C)(1), Illegal Cultivation of Marijuana, in violation of R.C. 2925.04(A), Possession of Marijuana in excess of 200 grams, in violation of R.C. 2925.11(A)(C)(3), Possessing Criminal Tools, in violation of R.C. 2923.24, Illegal Cultivation of Marijuana, in violation of R.C. 2925.04, and Possession of Marijuana (in excess of one kilogram), in violation of R.C. 2925.11(A)(C)(3).  A co-defendant, Scott Reeder, was charged with similar offenses.

{¶3}    The second and third counts, illegal cultivation of marijuana and possession of marijuana in excess of 200 grams, were dismissed.  Following a jury trial, Slone was found not

guilty of the first and last counts, aggravated possession of drugs (mushrooms) and possession of marijuana in excess of one kilogram. The jury found Slone guilty of possessing criminal tools and illegal cultivation of marijuana.

{¶4} Slone has appealed her convictions raising three assignments of error.

II.

ASSIGNMENT OF ERROR II

"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTIONS."

{¶5} In her second assignment of error, Slone argues that the evidence was insufficient to prove her guilt. We do not agree.

{¶6} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶7} Slone focuses on only one point in her assignment of error – the State failed to prove that she was ever observed at 1198 Beardsley Street. At trial, she admitted she owned the Beardsley home. She does not dispute the fact that marijuana was grown in the home. On

appeal, she argues that there must be evidence of her presence at the home for her to be convicted. We do not agree.

{¶8}  The indictment charged that Slone and Reeder knowingly cultivated marijuana, in violation of R.C. 2925.04(A). "'Cultivate' includes planting, watering, fertilizing, or tilling." R.C. 2925.01(F). The trial court also instructed the jury on aiding and abetting. R.C. 2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." "Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is 'stated * * * in terms of the principal offense' and does not mention complicity." *State v. Herring* (2002), 94 Ohio St.3d 246, 251, quoting R.C. 2923.03(F). See, also, *State v. White*, 9th Dist. Nos. 23955, 23959, 2008-Ohio-2432, ¶28.

{¶9}  As this Court recognized in *White* at ¶29:

> "'To aid is to assist.' *State v. Williams*, 9th Dist. No. 21840, 2004-Ohio-4316, at ¶19, quoting *State v. Sims* (1983), 10 Ohio App.3d 56, 58. For a person to be convicted of aiding or abetting another in a crime, 'the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime.' *State v. Johnson* (2001), 93 Ohio St.3d 240, syllabus. Further, the evidence must show that the defendant expressed concurrence with the unlawful act or intentionally did something to contribute to an unlawful act. *State v. Stepp* (1997), 117 Ohio App.3d 561, 568."

{¶10}  The State offered sufficient evidence to prove Slone assisted in the cultivation of marijuana. While there was no direct evidence that she watered the plants or tilled the soil, there was sufficient evidence of her support of the marijuana growing operation.

{¶11}  The story of Slone's support begins with how police became aware of the operation. On a cold January day, officers were in Akron conducting surveillance of a drug transaction unrelated to Slone and Reeder. One officer was positioned across from the Akron Garden Center. From his car, he observed Slone's minivan being loaded with two large bags of

topsoil. Based on his experience, he thought the purchase of two large bags of topsoil in January was unusual. He followed the minivan to 1198 Beardsley, Slone's house.

{¶12} The officer believed that marijuana was being grown in Slone's house. He conducted a "trash pull," which meant he took the trash from the garbage container placed on the curb. He found evidence of marijuana being grown, including a cup with green residue, green stems, and seeds. He also found the tops of milk jugs, typically used in the cultivation of marijuana. Finally, he found mail addressed to Slone and a date-book that belonged to her.

{¶13} The officer then subpoenaed the electric bills for Slone's home. He learned that the bill for Slone's home was higher than the bills for her neighbors, indicating higher energy consumption, also consistent with marijuana cultivation. Eventually, the officer received a warrant to conduct a thermal imagery search. The thermal image of the home revealed abnormal amounts of heat in the attic.

{¶14} Based on this evidence, officers obtained a search warrant and used it to search Slone's home. Reeder was alone at the home when the officers searched. According to the officer who talked with him, Reeder said that Slone owned the home, she lived there, and it was unusual for her not to be home. He also told the officers that he slept on the couch because the bedroom in the home was Slone's. In the bedroom, officers found Slone's clothes. They found her checkbook, electric bill, and credit card bill. They found letters written to Slone by a friend who was incarcerated. In the bathroom, the officers found make-up, women's products, and a prescription pill bottle with Slone's name on it.

{¶15} In addition to talking with Reeder, and finding Slone's personal items, officers discovered an extensive marijuana cultivation operation. A Drug Enforcement Agency special agent explained what he found in the attic. In addition to 69 marijuana plants, there were grow

lights, exhaust fans, insulation, and bug spray. He testified that this was a complete growing operation. There were other items found in the home related to the sale of drugs, including a digital scale, baggies, rolling papers, and books describing how to grow marijuana. Officers also found mushrooms in the kitchen.

{¶16} Mr. Reeder testified that he pleaded guilty to cultivating and possessing marijuana. He said he was responsible for the grow operation and Slone, who he described as being like a daughter to him, was not usually at the house. An officer testified, however, that on the day of the search, Reeder told the officers that Slone lived at the home and it was unusual for her not to be there.

{¶17} The sole question raised by this assignment of error is whether the State presented sufficient evidence to prove Slone was guilty of cultivating marijuana or that she aided and abetted the cultivation of marijuana. The State presented evidence that the marijuana was grown in Slone's home. Slone's minivan was used to transport topsoil to her home. Slone paid the utility bills, including the unusually high electric bills. Although there was no evidence that Slone tilled the soil or watered the plants, there was sufficient evidence to prove that Slone aided or abetted Reeder's admitted cultivation. Considering the evidence in a light most favorable to the State, from providing a means of transportation to a place to grow the marijuana, and paying for the utilities to support the operation, the State proved Slone aided and abetted the cultivation of marijuana. Accordingly, her second assignment of error is overruled.

ASSIGNMENT OF ERROR III

"APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶18} In her third assignment of error, Slone contends her convictions are against the manifest weight of the evidence. We do not agree.

{¶19} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing *Thompkins*, 78 Ohio St.3d at 390.

{¶20} A determination of whether a conviction is against the manifest weight of the evidence does not permit this court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

{¶21} In support of her third assignment of error, Slone argues that her conviction is against the weight of the evidence based on the cumulative effect of the facts and law argued in the first two assignments of error. She argues that there was "minimal evidence" connecting her to the cultivation and, although the grow operation was found in a home she owned, there was no evidence indicating she was aware of Reeder's activities.

{¶22} We previously determined that the evidence, considered in a light most favorable to the State, was sufficient to support Slone's conviction. A police officer testified that Reeder told him during the search, that it was unusual for Slone not to be at her home. At trial, Reeder testified that Slone was not involved in the complete marijuana operation in her home. To conclude that the conviction was against the weight of the evidence, we would have to decide

that the jury should have believed Reeder's testimony over the police officer's explanation of what Reeder said to him at the time the search warrant was being executed. We would also have to disregard the evidence that Slone paid the bills, provided a home to Reeder, and that her van was used to transport topsoil, all in support of the growing operation.

{¶23} "The weight to be given the evidence and the credibility of the witness[es] are primarily for the trier of the facts." *State v. Jackson* (1993), 86 Ohio App.3d 29, 32, citing *State v. Richey* (1992), 64 Ohio St.3d 353, 363. Having reviewed the evidence, and considered the weight that should be accorded to it, we cannot conclude that Slone's conviction created a manifest miscarriage of justice that must be reversed. *Otten*, 33 Ohio App.3d at 340. Slone's third assignment of error is overruled.

ASSIGNMENT OF ERROR I

"THE COURT ERRED IN PERMITTING THE STATE TO INTRODUCE INTO EVIDENCE A DIARY (DATE PLANNER) FROM THE CALENDAR YEAR 2002 AS DOCUMENTATION OF APPELLANT'S ALLEGED DRUG ACTIVITY."

{¶24} In her first assignment of error, Slone argues that the trial court erred when it admitted her 2002 date planner into evidence. Assuming that the trial court erred in admitting the date planner, its admission constituted harmless error.

{¶25} The 2002 date planner was discovered during the search of Slone's home. The officer testified that the planner contained evidence of drug transactions she made in 2002. Those transactions involved selling marijuana, mushrooms, and prescription medicines. The State argued, and the trial court agreed, that this evidence was relevant to show that Slone lived in the house because the planner was found during the search. The State also argued that the planner was relevant because it connected her past drug transactions to her current charges.

{¶26} The focus of the questions about the planner was directed at three distinct areas. First, the officer testified about Slone's sale of mushrooms in 2002, based on notations on the planner. As it relates to mushrooms, Slone was found not guilty of that count. Second, the officer testified about Slone's sale of prescription medicines. Slone was not charged with the sale of prescription medicines in this case. Third, the officer testified about Slone's marijuana sales. Slone was found not guilty of possession of marijuana, but guilty of cultivating marijuana and possessing criminal tools.

{¶27} On the other hand, there was significant evidence to connect Slone to the home. Notably, at trial, Slone admitted ownership of the home. Numerous personal items connected her to the home, including letters and bills that were more closely connected in time than the 2002 date planner. During the search, Reeder told the officers that it was unusual for Slone not to be at the home. Most importantly, Slone was acquitted of the two counts that were most closely tied to the planner, possession of marijuana and possession of mushrooms. Accordingly, any error in admitting the 2002 date planner was harmless. Crim.R. 52(A) (providing that any error "which does not affect substantial rights shall be disregarded."); *State v. Brown* (1992), 65 Ohio St.3d 483, 485 ("Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal."). Slone's first assignment of error is overruled.

III.

{¶28} Slone's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, J.
CONCURS

BELFANCE, P. J.
CONCURS, SAYING:

{¶29} I concur. However, with respect to Ms. Slone's first assignment of error, I would definitively conclude that the trial court erred in admitting the 2002 datebook. It is clear that the main reason the State sought admission of the datebook was to suggest that because Ms. Slone was previously involved in drug transactions, including the sale of mushrooms and marijuana,

she must still be involved with drug transactions. "'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith,' but may be admissible for certain other purposes[,]" none of which are implicated in the instant matter. *State v. Morris*, 9th Dist. No. 09CA0022-M, 2010-Ohio-4282, at ¶11, quoting Evid.R. 404(B).

{¶30} The State's use of inadmissible other acts evidence is troubling. Nonetheless, I concur because the admission of the evidence was harmless beyond a reasonable doubt given the substantial evidence supporting the conclusion that Ms. Slone lived in and/or frequented the premises at issue. See id. at ¶34. In addition, the jury found Ms. Slone not guilty of the possession of mushrooms and not guilty of the possession of marijuana; thus, supporting a conclusion that the inadmissible evidence did not contribute to Ms. Slone's conviction. *State v. Rahman* (1986), 23 Ohio St. 3d 146, 151.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.