[Cite as *State v. Akins*, 2024-Ohio-1491.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230302 |
| | | TRIAL NO. B-2100105 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JAHMAN AKINS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 19, 2024

*Melissa A. Powers,* Hamilton County Prosecuting Attorney, and *H. Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna* for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} In this criminal appeal, defendant-appellant Jahman Akins appeals his convictions for murder, tampering with evidence, and having weapons while under a disability. Akins raises eight assignments of error. Akins argues the trial court erred in resolving his *Batson* challenge during voir dire, by admitting statements of a nontestifying witness, by excluding statutory language from the jury instructions, and by imposing consecutive sentences. Akins also argues that the evidence supporting his convictions was legally insufficient, that the convictions were against the manifest weight of the evidence, that he received ineffective assistance of trial counsel, and that there was prosecutorial misconduct during closing arguments. For the following reasons, we overrule all eight assignments of error and affirm Akins's convictions.

## Background

{¶2} On January 5, 2021, Kevin Suttles was murdered while at Mike J.'s barbershop in Roselawn. That day, a masked assailant entered the neighboring barbershop. The proprietor of the neighboring barbershop described the masked assailant as a tall, light-skinned Black man. The masked assailant asked for a particular person, but that person was not there, so the proprietor told the masked assailant to try Mike J.'s barbershop next door. Within the next minute, multiple gunshots rang out and Suttles was shot nine times.

{¶3} Witnesses reported seeing a man clothed in black exit from the barbershop and flee while tucking a handgun into his clothing. One witness, Robert Miller, was a barber working at Mike J.'s barbershop that day who was on break in his car during the shooting. Miller saw the masked assailant running away. Miller drove after him. The masked assailant and Miller both drew their pistols and exchanged fire.

A nearby surveillance camera recorded the exchange of gunfire. The masked assailant shot low, leaving a bullet lodged in the ground that the police later recovered, while Miller struck the assailant once. A nearby off-duty police officer photographed the masked assailant getting into a silver pickup truck. Meanwhile, Miller gathered his shell casings and disposed of them along with his firearm in Winton Woods Lake because he was prohibited from having a firearm by a prior felony home-invasion conviction in Michigan. No witness could affirmatively identify the masked assailant.

{¶4} About 14 minutes later, Jahman Akins arrived with a single gunshot wound at Jewish Hospital in a silver pickup truck driven by a relative. A detective later described Akins as "light skinned" and with an "average build" while the relative was "darker skinned" and "a little bit smaller." Surveillance cameras at the hospital recorded Akins entering the hospital in a black sweatshirt and black pants but without shoes. As it was January, Akins's relative and others wore winter coats. Shortly after arriving, Akins exited shirtless from the hospital and threw some items into a hospital garbage can. Police officers later searched the trash can and retrieved a white tee shirt, a black thermal shirt and a black sweatshirt with bullet holes and blood stains.

{¶5} After Akins was admitted and changed into a hospital gown, hospital staff removed his black pants. Police officers seized Akins's black pants and found them bloodstained. The pants pockets held, among other things, $4,700 in cash and airline tickets, one of which was for a flight from Las Vegas, Nevada, to Cincinnati, Ohio, in Akins's name. Later DNA testing on Akins's bloodstained pants matched that blood to the DNA of the victim, Kevin Suttles.

{¶6} Police officers detained Akins's relative at the hospital and seized two cell phones from him. One cell phone was in the relative's name. The other cell phone

was unlabeled but held photos of Akins. That phone's location data also recorded the phone traveling from Las Vegas, Nevada, to Cincinnati, Ohio, on January 4, matching the itinerary of the airplane tickets recovered from Akins's pants. The cell phone's location data also reported that on January 5, the day of the murder, the cell phone was within a half-mile of Mike J.'s barbershop at the time of the murder and then traveled to Jewish Hospital where police officers eventually seized it.

{¶7} Jewish Hospital transferred Akins by ambulance to the University of Cincinnati Medical Center for treatment. Police officers accompanied Akins during the ambulance ride. It is unclear during this time whether Akins was handcuffed, told he was under arrest, or read his *Miranda* rights. During the ambulance ride, a police officer attempted to swab Akins's hand for gunshot residue. In response, Akins stuck his hand underneath him so as to wipe his hands on his gurney bed. Akins eventually relented and the collected sample later tested positive for gunshot residue. A police officer also asked Akins several questions from a questionnaire which Akins refused to answer.

{¶8} After Akins received medical treatment, police officers interviewed Akins. Akins told the officers that he had been walking to a store in Lincoln Heights when a "15-year-old kid" shot him in the back and shoulder. Detectives were unable to corroborate Akins's account. Miller later approached the police with his attorney and entered into a cooperation agreement to testify in exchange for immunity from prosecution for having a weapon while under a disability.

{¶9} Akins was charged in a five-count indictment for (1) murder in violation of R.C. 2903.02(A), with a firearm specification; (2) felony murder in violation of R.C. 2903.02(B), with a firearm specification; (3) tampering with evidence

4

in violation of R.C. 2921.12(A)(1); (4) having weapons while under a disability in violation of R.C. 2923.13(A)(2); and (5) having weapons while under a disability in violation of R.C. 2923.13(A)(3). Prior to trial, Akins stipulated that he had previously been convicted of a felony drug offense and a felony offense of violence, which precluded him from acquiring, having, carrying, or using a firearm, and that he had not been relieved from such disability under operation of law or legal process.

{¶10} After a two-week trial, the jury found Akins guilty as charged. At sentencing, the trial court merged the felony-murder count with the murder count and also merged the two having-weapons-while-under-a-disability counts, and sentenced Akins to consecutive terms of 15 years to life, plus three years on the firearm specification, for murder, 24 months for tampering with evidence, and 12 months for having a weapon while under a disability, for an aggregate term of 21 years to life. Akins now timely appeals his convictions.

### Law and Analysis

{¶11} Akins raises the following eight assignments of error:

1.  The court erred to the prejudice of [Akins] by not finding purposeful discrimination by the state against African Americans during voir dire, and thus violated [Akins]'s rights to due process and equal protection.

2.  The trial court erred when it allowed in statements of a nontestifying witness.

3.  The trial court erred to the prejudice of [Akins] as there was insufficient evidence to convict.

4. The trial court erred to the prejudice of [Akins] because the verdicts were against the manifest weight of the evidence.

5. [Akins] was denied effective assistance of trial counsel as guaranteed by Article 1, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

6. [Akins] was denied due process of law when the trial court refused to include statutory language in the jury instructions.

7. The state engaged in misconduct via unsupported statements at closing which deprived [Akins] of his constitutional due process rights to a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 2, 9, and 16 of the Ohio Constitution.

8. The record does not support the consecutive sentence imposed by the court.

Though raised separately, Akins argues the third and fourth assignments of error together.

### 1. Batson *challenge during voir dire.*

{¶12} In his first assignment of error, Akins argues that the trial court erred when it denied his *Batson* challenge in response to the prosecutor's use of a peremptory strike to remove one of two remaining African American potential jurors and when the trial court did not conduct a sufficient hearing to decide the challenge.

{¶13} The Supreme Court established a three-step procedure for evaluating claims of racial discrimination in peremptory strikes in *Batson v. Kentucky*,

476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986): first, the opponent of the strike must make a prima facie showing of discrimination; second, the proponent must give a race-neutral explanation for the challenge; and third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination. *State v. White*, 85 Ohio St.3d 433, 436, 709 N.E.2d 140 (1999), citing *Batson* at 96-98. A trial court's ultimate determination at step three of a *Batson* challenge is entitled to deference, because it turns largely on an evaluation of credibility. *State v. Garrett*, 171 Ohio St.3d 139, 2022-Ohio-4218, 216 N.E.3d 569, ¶ 70, quoting *White* at 437, quoting *Batson* at 98, fn. 21. Accordingly, "[a] trial court's findings of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *Id.*, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 106. If, however, a trial court errs in applying *Batson*, the error is structural and never harmless. *Id.*

{¶14} We need not analyze the first step because the issue of whether Akins made a prima facie showing of discriminatory intent was mooted once the state responded to Akins's challenge without waiting to see if the trial court accepted it. *See White* at 437, citing *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), and *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992). Thus, we focus on steps two and three.

{¶15} The second step of the *Batson* analysis asks whether the state supplied a race-neutral explanation for the peremptory strike. Here, the prosecutor explained the peremptory strike to the court stating the potential juror worked at Talbert House for many years, was too involved in the justice system, and made specific reference to flaws within the criminal justice system. Those factors led the prosecutor to worry that

the potential juror may try to fix those flaws while in the jury room and the prosecutor used the peremptory strike to alleviate those worries.

{¶16} Though this explanation is race-neutral, Akins argues that it is nevertheless an invalid explanation because the potential juror's "responses were ideal answers from a potential juror": she could still treat a victim engaged in the drug world as a murder victim, had friends who were police officers, and was conscientious about potential rushes to judgment. However, this argument "misconceives the nature of a *Batson* claim." *See White* at 437. The sole issue in step two of the *Batson* analysis is whether the proponent gave a race-neutral explanation for the peremptory challenge. *Id.* The "[race-neutral explanation] need not rise to the level of justifying exercise of a challenge for cause." *Id.*, quoting *Batson*, 476 U.S. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69. While a prospective juror's answers may have been sufficient to foreclose striking her for cause, both prosecutors and defense attorneys must remain free to challenge on a peremptory basis those jurors whose answers create overall concerns on the subject at issue. *Id.* Thus, the prosecutor provided a race-neutral explanation, and the *Batson* analysis moves to step three.

{¶17} The third step of a *Batson* challenge asks if the court properly determined, under all the circumstances, whether the challenger has proven purposeful racial discrimination. In doing so, the trial court may not simply accept a proffered race-neutral reason at face value but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. The court must assess the plausibility of the prosecutor's stated reason in light of all the

8

circumstances. *See id.*, quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).

**{¶18}** Akins argues that the trial court did not assess whether the prosecutor's reason was plausible and did not expressly apply the three-part *Batson* test on the record. However, "the trial court is not compelled to make detailed factual findings to comply with *Batson.*" *Id.* at ¶ 98, citing *Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Instead, "a trial court may express its opinion of the state's race-neutral justification in the form of a clear rejection of the *Batson* challenge, without offering detailed findings, '[a]s long as [the] trial judge affords the parties a reasonable opportunity to make their respective records.' " *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 160, quoting *Frazier* at ¶ 98, quoting *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir.2006).

**{¶19}** Here, in response to the *Batson* challenge, the trial court stated:

So, this is the first one anybody has made a challenge to, who is a person of color.[1] And I do find that the state has given sufficient reason to excuse her * * * so I'm going to deny your challenge. Thank you very much.

This is a clear rejection of the *Batson* challenge. *See Frazier* at ¶ 54, 59 (affirming the trial court where it responded to two challenges, "Well, that is on the record. * * * And she is excused" and "All right. * * * The *Batson* challenge is on the record."); *see also Adams* at ¶ 161 (affirming the trial court concluding, "Okay. That is a race-neutral reason. Your *Batson* challenge is overruled."). The trial court permitted the state and

---

[1] Of the four total African American jurors in the venire, two were excused for cause by the trial court for hardship. No objection was made to the court excusing those jurors.

Akins a reasonable opportunity to make their respective records by allowing Akins's counsel to respond to the prosecutor's proffered race-neutral explanation for the peremptory strike.

{¶20} Because the prosecutor provided a race-neutral explanation for the peremptory strike and Akins makes no argument why that explanation was pretextual beyond arguing the explanation would not support striking the prospective juror for cause, the trial court properly rejected Akins's *Batson* challenge. The trial court properly resolved the *Batson* challenge procedurally where the trial court allowed Akins to respond to the state's race-neutral explanation and make his record and then clearly rejected the challenge on the record.

{¶21} Accordingly, we overrule the first assignment of error.

### 2. Admission of statements by a nontestifying witness.

{¶22} In his second assignment of error, Akins argues the trial court erred by admitting out-of-court testimonial statements of a nontestifying witness in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution.[2] Specifically, Akins objects to the lead detective testifying on redirect examination that, based on his interview with Mike Johnson, the owner of the barbershop where Suttles was murdered, there were three people in the barbershop during the shooting: Johnson, Suttles, and the masked assailant.

{¶23} An appellate court reviews objections to evidence based on the Confrontation Clause de novo. *State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 10

---

[2] Akins argues his right to confront witnesses under the federal constitution and does not raise his right "to meet witnesses face to face" under Article I, Section 10 of the Ohio Constitution, though he does raise the Ohio Constitution in his first, fifth, and seventh assignments of error. Accordingly, we do not rule on any potential implications under Ohio's Constitution for this assignment of error.

(1st Dist.). "[T]he Confrontation Clause prohibits 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " *Id.*, quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), paragraph (a) of the syllabus. The "central concern" of the Confrontation Clause "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *State v. Madrigal*, 87 Ohio St.3d 378, 384, 721 N.E.2d 52 (2000), quoting *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

**{¶24}** In *Crawford*, the United States Supreme Court established a framework for determining whether the Confrontation Clause bars the admission of evidence. *State v. Matthews*, 1st Dist. Hamilton Nos. C-060669 and C-060692, 2007-Ohio-4881, ¶ 9, citing *Crawford*. The Court in *Crawford* distinguished between testimonial and nontestimonial statements, explaining that nontestimonial statements do not implicate the Confrontation Clause while testimonial statements by a nontestifying witness are inadmissible unless (1) the witness is unavailable and (2) the defendant had a prior opportunity to cross-examine that witness. *Id.*, citing *Crawford* at 52-54. Though the Court in *Crawford* "declined to 'spell out a comprehensive definition' of 'testimonial,' it stated that the term 'applies at minimum,' to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations." *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 13, quoting *Crawford* at 68.

**{¶25}** Here, the lead detective was asked on redirect examination, "Based on your interview with [Johnson], how many people were in the [barbershop] at the time

of the murder?" Akins objected on hearsay grounds, but the trial court overruled the objection. The detective then testified that Johnson told him that at the time of the shooting, the victim, the shooter, and Johnson himself were present in the barbershop.

{¶26} The Supreme Court has held that statements made in response to police questioning are testimonial, and thus subject to exclusion by the Confrontation Clause, "when the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at ¶ 19, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Johnson's statements to the detective were testimonial. *See Smith*, 2019-Ohio-3257, 141 N.E.3d 590, at ¶ 13. Johnson described the scene of the shooting in the context of a police interview and in response to the detective's questions. The interview was conducted after the murderer had fled from the barbershop so there was no ongoing emergency or danger to the witness. Based on these circumstances, the primary purpose of the interview of a witness to a murder was to establish the course of past events that happened in the leadup to the murder for later prosecution.

{¶27} Having determined that Johnson's statements to the detective were testimonial in nature, they could be admissible if Johnson was present in court and available for cross-examination or if Akins had a prior opportunity to cross-examine Johnson. *See Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.E.2d 177. As neither of these circumstances occurred, the admission of Johnson's statements to the detective violated the requirements of the Confrontation Clause. We proceed to review this violation for harmless error. *Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, at ¶ 16.

{¶28} Under Crim.R. 52(A), harmless-error review requires: (1) that the defendant was prejudiced by the admission of the improper evidence at trial, (2) that the appellate court believes that the error was "not harmless beyond a reasonable doubt," and (3) that after excising the improper evidence, the remaining evidence overwhelmingly supports finding the defendant guilty. *Smith*, 2019-Ohio-3257, 141 N.E.3d 590, at ¶ 23, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27-29. Applying this analysis to the erroneously admitted out-of-court statements by Johnson to the detective, we conclude the error was harmless because the inadmissible evidence was cumulative to other admissible evidence establishing who was in the barbershop at the time of the shooting. Error in admitting evidence that is cumulative to other evidence is harmless. *See Robinson* at ¶ 16; *see also State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 18. Here, Miller testified that when he left Mike J.'s barbershop prior to the shooting, just Johnson and Suttles were inside. A brief period elapsed between Miller leaving the barbershop and the shooting. No witnesses identified someone else entering the barbershop other than the masked assailant during that period. From Miller's direct testimony and the other facts in evidence, the jury could have concluded that just Johnson, the victim, and the shooter were inside Mike J.'s when the shooting occurred. Moreover, as discussed further below, the other evidence presented established Akins's guilt as the masked shooter beyond a reasonable doubt, absent Johnson's statements to the detective. Thus, though we conclude that admitting Johnson's statements to the detective violated the Confrontation Clause, that error was harmless.

{¶29} Consequently, we overrule the second assignment of error.

### 3. Sufficiency and manifest weight of the evidence.

{¶30}   In his third and fourth assignments of error, Akins argues together that his convictions for murder, tampering with evidence, and having a weapon while under a disability were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶31}   A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring).  The relevant inquiry, when reviewing the sufficiency of the evidence, is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 48.  In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses.  *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 45.  It is a question of law for the court to determine and a court is not to weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *Id.*

{¶32}   In contrast to a challenge to the sufficiency of the evidence, in deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. *Thompkins* at 390 (Cook, J., concurring).  In reviewing the manifest weight of the evidence, an appellate court must review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine

whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *Thompkins* at 387.

**{¶33}** The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, ¶ 25. In reviewing a challenge to the weight of the evidence, this court sits as a "thirteenth juror." *State v. Curry*, 1st Dist. Hamilton No. C-180493, 2020-Ohio-1230, ¶ 17, quoting *Thompkins* at 387. However, a reviewing court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Porter* at ¶ 25.

**{¶34}** Akins was convicted of three offenses: murder, having a weapon while under a disability, and tampering with evidence.[3] First, to find Akins guilty of murder and the accompanying firearm specification, the jury had to find that Akins "purposely caused the death of [Suttles]" and that he "had a firearm on or about his person or under his control while committing the offense of murder and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense of murder." *See* R.C. 2903.02(A) and 2941.145(A). Second, to find Akins guilty of having a weapon while under a disability, the jury had to find that Akins "knowingly acquired, had, carried, or used any firearm, and that he had been convicted of any felony offense of violence, and that he had not been relieved from disability

---

[3] Akins was also found guilty of felony murder with a firearm specification and a second count of having a weapon under a disability. The trial court merged the felony-murder charge with the murder charge and merged the two having-a-weapon-while-under-a-disability charges.

under operation of law or legal process." R.C. 2923.13(A)(2). Third, to find Akins guilty of tampering with evidence, the jury had to find that Akins, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, altered, destroyed, concealed, or removed any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1).

{¶35} Akins focuses his argument on the essential element of identity. Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15. The identity of the accused, like any other element of an offense, can be proven with direct and circumstantial evidence. *State v. Todd*, 1st Dist. Hamilton No. C-220380, 2023-Ohio-2139, ¶ 18. Circumstantial evidence and direct evidence have the same probative value. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of syllabus. A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *Tate* at ¶ 19.

{¶36} While there is no direct evidence positively identifying Akins as the masked assailant, the circumstantial evidence supports an inference that he was. Witnesses provided general descriptions of a tall, lighter-skinned African American person in black clothes and a mask. While not dispositive on its own, Akins is a lighter-skinned African American man. Witnesses testified that the masked assailant entered Mike J.'s barbershop at the time of the murder and that shots were fired. The masked assailant then fled, exchanged gunfire with Robert Miller, was shot once by Miller, and was then seen leaving the scene in a silver truck. 14 minutes after the murder, Akins

arrived at Jewish Hospital in a matching silver truck and presented with gunshot wounds. There, Akins's pants were taken from him. Those pants tested positive for the victim's blood. Police also seized a cell phone from the person who drove Akins to the hospital. The cell phone's location data indicated it was nearby Mike J.'s barbershop at the time of the murder and then traveled to Jewish Hospital. That cell phone had photos of Akins on it and its location data indicated it traveled from Las Vegas to Cincinnati on the same itinerary as a plane ticket in Akins's name that police found on him.

{¶37} The fact that Akins's pants were stained with the victim's blood suggests on its own that Akins was the murderer. Moreover, Akins appeared with gunshot wounds just 14 minutes after the murderer was shot and a cell phone, the photos on which suggest it belonged to Akins, followed a path from nearby the murder scene to Jewish Hospital. Viewing this web of circumstantial evidence in a light most favorable to the prosecution, a rational jury could have found that Akins was the masked assailant who shot Suttles. Consequently, there was sufficient evidence supporting Akins's conviction for murder with a firearm specification.

{¶38} On a manifest-weight review, we look to the conflicting evidence and must assess which of the competing inferences is more believable. *State v. Richards*, 1st Dist. Hamilton No. C-210656, 2022-Ohio-4698, ¶ 13, quoting *State v. Williams*, 10th Dist. Franklin No. 10AP-779, 2011-Ohio-4760, ¶ 21. The competing inference is that Akins was shot in an unrelated shooting while walking in Lincoln Heights, miles away from the shooting in Roselawn, and sought treatment at Jewish Hospital.

{¶39} This inference is far less believable than the inference that Akins was the masked assailant who shot Suttles and was shot by Miller. If Akins was shot in an

17

entirely unrelated shooting, then there would be no way for Suttles's blood to stain the pants that Akins wore into Jewish Hospital. Moreover, the competing inference is internally strange as Akins arrived at Jewish Hospital without shoes or a winter coat on, implying he was walking barefoot and without a coat in Lincoln Heights in January. There is nothing in the record suggesting that the jury lost its way and created a manifest miscarriage of justice in rejecting this competing inference and concluding that Akins was the masked assailant who shot Suttles. This is not an exceptional case where the evidence weighs heavily against conviction. Consequently, Akins's conviction for murder with the associated firearm specification was not against the manifest weight of the evidence.

{¶40} The same operative facts that support Akins's conviction for murder with a firearm specification support Akins's conviction for having a firearm while under a disability. Akins stipulated at trial that he had been convicted of a felony offense of violence and had not been relieved from the disability resulting from that conviction, so the sole element in dispute was whether Akins "knowingly acquired, had, carried, or used any firearm." Because there was sufficient evidence to convict Akins of having murdered Suttles with a firearm and that conviction was not against the weight of the evidence, there was sufficient evidence to convict Akins of having acquired, had, carried, or used a firearm during that murder and that conviction was not against the weight of the evidence.

{¶41} With respect to the tampering-with-evidence conviction, the operative facts that support Akins's conviction for murder also support an inference that Akins knew an official investigation into that murder would begin. R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention

18

to cause a certain result. *See State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 15. Purpose is generally shown by circumstantial evidence. *Id.* Here, while Akins was at Jewish Hospital after the murder, police officers saw Akins dispose of his bloody clothes in a garbage can outside the hospital. A reasonable factfinder could conclude that Akins disposed of his clothes for the purpose of impairing their availability as evidence in the impending murder investigation by mixing it with other hospital refuse. The fact that Akins put his bloody clothes in a public garbage can in the well-lit front entrance to the hospital is immaterial as a defendant's failure to pursue a more successful hiding spot does not negate the element of concealment. *Id.* at ¶ 17, citing *State v. Rock*, 10th Dist. Franklin No. 13-13-38, 2014-Ohio-1786, ¶ 22. Therefore, there was sufficient evidence supporting Akins's conviction for tampering with evidence.

{¶42} The competing inference, that Akins innocently discarded his bloody clothes, is less credible than the inference that he sought to dispose of any evidence connecting him with the murder. As discussed above, the inference that Akins was shot in an unrelated shooting is less credible than the inference he was the masked assailant, discounting any potential innocent reason Akins may have had for disposing of his bloody clothes. Moreover, had Akins's disposal been innocent, it would make more sense to discard his bloody clothes altogether inside the hospital instead of going outside the hospital in January without shoes or a winter coat to dispose of his clothes in a public garbage can. There is nothing in the record suggesting that the jury lost its way and created a manifest miscarriage of justice in rejecting this competing inference and concluding that Akins disposed of his bloody clothes to impair their availability as evidence against him. This is not an exceptional case where the evidence weighs

heavily against conviction. Consequently, Akins's conviction for tampering with evidence was not against the manifest weight of the evidence.

{¶43} In sum, there was sufficient evidence to support each of Akins's three convictions and those convictions were not against the manifest weight of the evidence. Consequently, we overrule Akins's third and fourth assignments of error.

### 4. Ineffective assistance of trial counsel.

{¶44} In his fifth assignment of error, Akins argues he was denied the effective assistance of trial counsel because of two missteps: (1) trial counsel failed to move for a mistrial after the trial court barred counsel from exploring alternative theories of the case with a main witness and (2) trial counsel failed to make a motion to suppress or motion in limine to proactively bar any mention of Akins's refusal to answer questions while in police custody.

{¶45} To succeed on an ineffective-assistance-of-counsel claim, Akins must show that (1) trial counsel's performance was deficient, and (2) the deficient performance deprived Akins of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. An appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52. Trial counsel's performance is "deficient" when there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. *Strickland* at 694.

### A. Failure to seek a mistrial.

{¶46} First, we address whether Akins's trial counsel's performance was deficient for failing to move for a mistrial after being denied the opportunity to explore

20

alternative theories of the case with a prosecution witness. The state called the barber working at the shop, Robert Miller, to testify. Miller testified that he, Johnson, the barbershop's owner, and Suttles, the victim, were at the barbershop when the masked assailant entered and murdered Suttles. Miller testified that he shot the masked assailant and later disposed of his shell casings and firearm in a lake because he had a prior home-invasion conviction for robbing a drug dealer and it was a crime for him to have the firearm.

{¶47} Before cross-examination, counsel and the court held a sidebar where Akins's counsel sought permission to explore Miller's prior conviction in furtherance of the defense theory of the case that Miller and Johnson shot and robbed Suttles, because it matched the facts of Miller's home-invasion conviction. Akins's trial counsel proffered the theory that Suttles was involved in the narcotics trade, everyone in the barbershop was armed, both Miller and Johnson later destroyed or hid their firearms, and that something was likely removed from the barbershop because a ceiling tile was moved, and dust from the subceiling had fallen on the ground. The trial court barred Akins's counsel from exploring Miller's prior conviction or the defense theory with Miller. Akins argues that his trial counsel should have moved for a mistrial at that point because the trial proceeded with the defense barred from fully exploring its alternative theory of the case.

{¶48} The failure by Akins's trial counsel to move for a mistrial after being denied the opportunity to explore Miller's prior conviction on cross-examination was not deficient. Evid.R. 609 limits the use of evidence about prior convictions to impeach a witness to establishing the existence and the name of the prior conviction. *State v. Robb*, 88 Ohio St.3d 59, 71, 723 N.E.2d 1019 (2000). The rule allows cross-

examination to establish those facts, but it does not require it. *Id.* Where the existence and name of the prior conviction come out on direct examination, the defense generally is not prejudiced by being barred from raising the conviction on cross-examination because the jury already has the information it needs to assess the witness's credibility. *See id.* Moreover, Evid.R. 404 bars Akins's counsel from using Miller's prior conviction to imply he committed a similar offense here.

{¶49} Thus, there is no reasonable probability that the result of the trial would have been different even if Akins's counsel had moved for a mistrial and a new trial had been ordered, because Evid.R. 609 and 404 would operate just the same in the new trial and bar Akins's counsel from exploring Miller's prior conviction further on cross-examination or using that conviction to advance the theory that Miller committed a similar offense here.

### B. Failure to file a motion to suppress or motion in limine.

{¶50} Second, we turn to whether Akins's trial counsel's performance was deficient for failing to file a motion to suppress or motion in limine to bar any mention of Akins's exercise of his right against self-incrimination by refusing to answer questions while a police investigator conducted a gunshot-residue test on him during the ambulance ride from hospital to hospital or Akin's custodial status in that ambulance.

{¶51} A failure to file a suppression motion does not constitute per se ineffective assistance of counsel. *Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Even if there was an error by Akins's counsel for not resolving the issue proactively before trial, any potential error did not deprive Akins of a fair trial because

Akins's trial counsel effectively handled the issue during trial. During direct examination, the police investigator was asked about Akins's silence in response to the investigator asking him questions from a questionnaire. Akins's trial counsel immediately objected. In response, the state withdrew the question and withdrew the questionnaire that Akins refused to answer from the state's exhibits. This removed any potential unfairness in both the testimony and the documentary evidence arising from Akins's silence being potentially used against him.

{¶52} Because there is no reasonable probability that the questioning of Miller would be different had trial counsel sought and been granted a mistrial and trial counsel effectively resolved at trial any potential unfairness from the state's use of Akins's refusal to answer police against him, Akins was not deprived of his right to the effective assistance of trial counsel.

{¶53} Consequently, we overrule Akins's fifth assignment of error.

### 5. Jury instructions regarding the state's cooperating witness.

{¶54} In his sixth assignment of error, Akins argues that the trial court abused its discretion by not providing his requested instruction to the jury about the testimony of Robert Miller, a witness for the state who was testifying pursuant to a nonprosecution agreement.

{¶55} An appellate court reviews a trial court's refusal to give a requested jury instruction for an abuse of discretion. *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 240. Requested jury instructions should ordinarily be given if they are correct statements of the law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction.

*State v. White*, 1st Dist. Hamilton No. C-150250, 2016-Ohio-3329, ¶ 72, quoting *Adams* at ¶ 240.

**{¶56}**  Akins requested the following instruction:

1.     You have heard the testimony of Robert Miller.  You have also heard that the government has promised him that he will not be prosecuted for possession of a firearm while under a disability, felonious assault, or tampering with evidence in exchange for his cooperation.

2.     It is permissible for the government to make such a promise.  But you should consider Robert Miller's testimony with more caution than the testimony of other witnesses.  Consider whether his testimony may have been influenced by the government's promise.

3.     Do not convict the defendant on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt.

**{¶57}**  The trial court denied Akins's requested instructions and instead instructed the jury pursuant to *Ohio Jury Instructions* ("OJI") CR Section 409.33(2):

Criminal actions by witnesses on other charges.  During argument you heard considerable discussion as to motives and actions of other persons.  If they acted improperly, charges could be brought against them.  The only person on trial here is the defendant, and the sole purpose of this lawsuit is determining whether the defendant is guilty or not guilty.  It is not to determine guilt or innocence of other persons

24

on other charges. However, in weighing the testimony, as the Court has told you before, you may consider their motives as going to the weight of the evidence. But we are only trying the case on this defendant.

**{¶58}** Akins assigns as error that the trial court did not include "statutory language in the jury instructions" but does not highlight where in his requested jury instructions the statutory language is, does not cite what statute he drew his requested instructions from, or highlight any inconsistency between the OJI instruction with any provision of the Revised Code. Instead, Akins argues that the OJI instructions insufficiently conveyed certain perceived credibility problems with Miller's testimony. The trial court did not abuse its discretion by refusing to instruct the jury to consider a cooperating witness's testimony with "more caution" where there was no legal authority that such an instruction is a correct statement of law. *See White*, 1st Dist. Hamilton No. C-150250, 2016-Ohio-3329, at ¶ 74. Akins cites no authority that his requested instructions were correct statements of law or that the OJI instruction was an incorrect statement of law. We note that the jury was informed of Miller's cooperation agreement with the state and that the OJI instruction does instruct the jury to consider a witness's potential motive to lie, conveying the essence of Akins's requested instructions.

**{¶59}** Thus, the trial court did not abuse its discretion in denying Akins's requested jury instructions because Akins advances no argument or authority that his requested instructions were a correct statement of law or that OJI CR Section 409.33(2) was an incorrect statement of law.

**{¶60}** Consequently, we overrule Akins's sixth assignment of error.

### *6. Prosecutorial misconduct during closing argument.*

**{¶61}** In his seventh assignment of error, Akins argues the state violated his right to a fair trial when, during closing argument, the prosecutor called Akins an assassin and a contract killer and commented that Akins failed to ask follow-up questions of witnesses, implying the defense had a burden of proof at trial.

**{¶62}** Prosecutorial-misconduct determinations require that "on the record as a whole, the misconduct can be said to have deprived the appellant of a fair trial." *State v. Hunter*, 1st Dist. Hamilton Nos. C-140684, C-140704 and C-140717, 2016-Ohio-123, ¶ 34. A prosecutor's remarks in closing argument are reversible misconduct if the remarks are improper and they prejudicially affected the due-process rights of the accused. *State v. Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, ¶ 29, quoting *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 44.

**{¶63}** During the first part of the state's closing argument, the prosecutor stated, "Motive. Why did Jahman Akins want to kill Kevin Suttles? I would submit to you, ladies and gentlemen, that you can consider the $4,700 that was in his pocket as a down payment, because Jahman Akins is a contract killer." Defense counsel immediately objected, arguing that there was no evidence to support labeling Akins as a contract killer and there was no evidence explaining the source of the $4,700 in cash found on him. The trial court overruled Akins's objection and issued the jury a curative instruction:

> You folks, you ultimately decide who said what and what it means. The attorneys don't always get it right in their closing arguments. Okay. They don't. And that's why what they said is not the evidence. Okay.

It's not. It's what you heard from the mouths of the witnesses, not from the attorneys. Okay.

**{¶64}** Courts across Ohio have cautioned attorneys from resorting to improper name-calling during closing argument rather than relying on the strength of their evidence. *See, e.g.*, *State v. Liberatore*, 69 Ohio St.2d 583, 433 N.E.2d 561 (1982), fn. 9 (calling defendant a "thug" and "hardnosed goon" improper); *State v. Burrell*, 1st Dist. Hamilton No. C-030803, 2005-Ohio-34, ¶ 25 ("psychopath"); *State v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517, ¶ 77 (1st Dist.) ("offender"); *State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 24 ("predator"); *Hall* at ¶ 29 ("wolf" and "predator"). Such tactics not only invite the jury to make its decision based on emotion rather than facts, but also imply an improper personal opinion by the prosecutor of the defendant's guilt. *Hall* at ¶ 33-35. Thus, it was improper and unnecessary to call Akins a contract killer, but it is important to note that the characterization was one isolated comment during closing argument of a two-week long trial, limiting the amount of prejudice it could cause on its own. *See State v. Hunt*, 5th Dist. Tuscarawas No. 2019 AP 07 0023, 2020-Ohio-1124, ¶ 37. More importantly, though the trial court should have sustained Akins's objection, it promptly mitigated the potential impact of the prosecutor's characterization by instructing the jury that the prosecutor's statement was not evidence. *See State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 117.

**{¶65}** During the rebuttal portion of the state's closing argument, the prosecutor stated:

And I thought it was interesting that [defense counsel] brought out through Ms. Bennett and Mr. Miller, that look around the room, can you

27

say its [Akins]? Ms. Bennett, Mr. Miller, nope, I can't say it's [Akins].

What's interesting is the follow-up question was never asked by [defense

counsel]. And it was never said. And nobody ever said that it wasn't

[Akins].

Defense counsel immediately objected to the extent that it implied Akins had a burden of proof at trial. The trial court overruled the objection and instructed the jury that the state bore ultimate burden of proof at trial.

{¶66} We see nothing improper in these statements. These statements do not clearly imply that Akins had a burden to prove anything. The prosecutor made the statement while addressing the fact that no witness had positively identified Akins as the assailant, among other potential inconsistencies in the state's case, that the defense raised in its closing argument. The prosecutor responded to those potential inconsistencies by remarking that while the witnesses' testimonies did not identify Akins as the masked assailant, their testimonies did not exclude Akins either. These statements were fair comments on exactly what the witnesses' testimony did and did not say about the identity of the masked assailant and a fair response to Akins's closing argument. *See State v. Walker*, 1st Dist. Hamilton No. C-190193, 2020-Ohio-1581, ¶ 39-41.

{¶67} Nor was it misconduct to comment on the defendant's failure to ask follow-up questions on the identity of the masked assailant. "[T]he state may comment upon a defendant's failure to offer evidence in support of its case. * * * Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." *Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079,

157 N.E.3d 716, at ¶ 122, quoting *State v. Collins*, 89 Ohio St.3d 524, 527-528, 733 N.E.2d 1118 (2000). Even if such a comment was necessarily prejudicial, the trial court again mollified any potential prejudice with curative instructions that the state bore the ultimate burden of proof at trial.

**{¶68}** Consequently, we overrule Akins's seventh assignment of error.

### 7. Imposition of consecutive felony sentences.

**{¶69}** In his eighth assignment of error, Akins argues that the trial court erred by imposing an aggregate sentence of 21 years' to life imprisonment instead of 18 years' to life imprisonment because the trial court did not overcome the statutory presumption of concurrent time.

**{¶70}** The Revised Code limits an appellate court's review of a trial court's felony sentencing. An appellate court may vacate or modify a sentence and remand the cause for resentencing when the court finds by clear and convincing evidence either (1) the record does not support the sentencing court's findings or (2) the sentence is otherwise contrary to law. R.C. 2953.08(C)(2)(a)-(b); *State v. White*, 1st Dist. Hamilton No. C-130114, 2013-Ohio-4225, ¶ 11. An appellate court must defer to a trial court's consecutive-sentences findings, and "the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5.

**{¶71}** R.C. 2929.41(A) sets a presumption that sentences of imprisonment must be served concurrently with each other. When a trial court imposes consecutive felony sentences of imprisonment, R.C. 2929.14(C)(4) requires the trial court to make certain findings at the sentencing hearing and incorporate them into the sentencing entry. *See State v. Jackson*, 1st Dist. Hamilton Nos. C-180245 and C-180246,

29

2019-Ohio-3299, ¶ 27. In making the required findings, the court is not obligated to state reasons to support its findings. *Id.* There is no "talismanic incantation" required for the trial court to make the R.C. 2929.14(C)(4) findings. *Id.*, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. So long as the appellate court can discern that the trial court engaged in the correct analysis and the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 27.

{¶72} The jury found Akins guilty of murder, felony murder with a firearm specification, tampering with evidence, and two counts of having a weapon under a disability. For the purposes of sentencing, the trial court merged the murder and the felony-murder charges and merged the two charges for having a weapon while under a disability. The trial court sentenced Akins as follows: (1) 15 years' to life imprisonment for murder, plus three years' imprisonment for the firearm specification; (2) 24 months' imprisonment for tampering with evidence; and (3) 12 months' imprisonment for having a weapon while under a disability. The trial court ordered the three sentences to be served consecutively so Akins's aggregate sentence was 21 years' to life imprisonment.

{¶73} Akins argues that the court did not make the required finding that "consecutive sentences are not disproportionate to the seriousness of [Akins's] conduct." *See* R.C. 2929.14(C)(4). However, the record at the sentencing hearing reveals the trial court stated the sentences were "not disproportionate to the seriousness of [Akins's] conduct and the danger he poses to society" and the record contains evidence that a 21-years-to-life-imprisonment aggregate sentence was not disproportionate to Akins's conduct, a murder with a firearm, and that Akins had a

previous felony record with two prior prison terms. Considering this record and the deferential standard of review on appeal to a trial court's factual findings at sentencing, the trial court satisfied R.C. 2929.14(C)(4) and the imposition of consecutive sentences was proper.

**{¶74}** Consequently, we overrule Akins's eighth assignment of error.

## Conclusion

**{¶75}** Having overruled all eight assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.