[Cite as *State v. Thomas*, 2025-Ohio-1516.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240461 |
|  |  | TRIAL NO. | B-2305218 |
| Plaintiff-Appellee, | : |  |  |
|  |  |  |  |
| vs. | : |  |  |
|  |  | *O P I N I O N* |  |
| KYRON THOMAS, | : |  |  |
|  |  |  |  |
| Defendant-Appellant. | : |  |  |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 30, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Stephanie Kessler*, for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

**{¶1}** Following his plea of no contest, defendant-appellant Kyron Thomas appeals the judgment of the Hamilton County Court of Common Pleas convicting him of three firearm-related felonies. Thomas argues that the search of his vehicle, during which police uncovered the firearms, was unlawful. He further contends that his attorney acted ineffectively in violation of the Sixth Amendment by not moving to dismiss the charges against him under *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022), which protects the individual right to firearm possession. For the reasons we discuss in this opinion, we disagree. We therefore affirm the judgment of the trial court.

### *Facts and Procedural History*

**{¶2}** On October 22, 2023, Thomas was indicted by a grand jury for carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree; and having a weapon while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree.

**{¶3}** Thomas moved to suppress evidence discovered on his person and in his car during an October 2023 traffic stop. The trial court conducted an evidentiary hearing on Thomas's motion.

**{¶4}** At the hearing, Officer Kyle Brown of the Cincinnati Police Department testified that he engaged Thomas in a traffic stop on Harrison Avenue. Another officer initially stopped Thomas for expired tags, and Brown and his partner responded to the stop as backup.

**{¶5}** Brown described what he observed as he and his partner approached Thomas's stopped car. For one, Brown observed that Thomas was smoking a small

cigar. He also smelled an odor of marijuana coming from Thomas's car. Brown testified that there was a substance that he recognized as marijuana hash on the center console of Thomas's car and in the floorboard area. Brown explained that he encounters marijuana virtually every day on the job.

{¶6} As he walked around the outside of the car, Brown observed an object in the back seat on the passenger side that he believed to be the butt of a gun. When Brown got to that side of the car, Thomas reached towards the passenger area, explaining that the bullets in his car were for a pellet gun. This alarmed Brown. Thomas was therefore ordered out of his car.

{¶7} Brown was wearing a body-worn camera ("BWC"), and the footage of his BWC was played at the suppression hearing. On the BWC footage, several officers can be seen policing the scene. The BWC footage also captured Thomas telling officers that the gun that they saw was a pellet gun. After Thomas was removed from his car, the footage depicts officers searching the back seat and discovering that the gun Brown saw was in fact a pellet gun.

{¶8} Nonetheless, Brown testified that he searched the entire vehicle. He did so, because after Thomas was removed from the car, Thomas told Brown's partner that there was an additional weapon inside the vehicle. During the search, Brown discovered a Magnum 9 mm semiautomatic underneath a jacket on the front passenger seat.

{¶9} After Brown testified, Thomas moved to continue the suppression hearing. This was so defense counsel could pursue the issue of whether Thomas had received adequate *Miranda* warnings before admitting to Brown's partner that there was a weapon inside the car. The trial court granted Thomas's request. Thereafter, Thomas submitted a supplemental suppression motion arguing that the search of the

vehicle was improperly based on an un-*Mirandized* statement.

**{¶10}** The suppression hearing resumed on May 1, 2024, with the testimony of Officer Benjamin Gunn, who was called by the defense.

**{¶11}** Gunn testified that he removed Thomas from his vehicle and, along with another officer, placed him in handcuffs. According to Gunn, Thomas was asked to get out of his car because officers had observed what they believed to be a gun in the back seat and because Thomas had reached in that direction. Officers believed this created a potentially dangerous situation and wanted to separate Thomas from the suspected firearm.

**{¶12}** Gunn testified that he walked Thomas in the direction of a police cruiser after he was handcuffed. Gunn testified that he patted Thomas down and discovered a cellphone, a baggy, and some money in his clothing. As a result, Gunn questioned Thomas as to whether there was anything illegal in his vehicle. Gunn did not believe Thomas was in custody at this time; therefore, he did not *Mirandize* him. After initially denying that he was in possession of contraband, Thomas eventually told Gunn that there was a gun in his vehicle. Gunn read Thomas his rights approximately a minute later.

**{¶13}** On May 21, 2024, the trial court denied Thomas's motion to suppress. It agreed with the State that "the officers were permitted to continue their search after finding the BB gun because they had smelled burnt marijuana in the vehicle and a continued search was proper for officer safety."

**{¶14}** Following the trial court's denial of the suppression motion, Thomas pleaded no contest to all three charges. The trial court found him guilty as charged and sentenced him to 12 months on the carrying a concealed weapon charge, 12 months on the improper handling charge, and 30 months on the weapons under

disability charge, all to be served concurrently. The trial court remitted fines and court costs and also explained that Thomas could be placed on two years of postrelease control.

**{¶15}** Thomas has appealed.

### *Analysis*

**{¶16}** On appeal, Thomas raises two assignments of error. First, he argues that the trial court erred in denying his motion to suppress. Second, he argues that trial counsel was ineffective for failing to file a *Bruen* motion. Neither assignment of error has merit.

### *Motion to Suppress*

**{¶17}** In his first assignment of error, Thomas raises three issues with regard to the trial court's denial of his motion to suppress. First, he argues that concerns for officer safety did not justify the search of his vehicle after police discovered that the initial gun was a pellet gun. Second, he contends that the smell of marijuana did not justify the second search of his vehicle. And third, he contends that, to the extent they were utilized to justify the search of his car, his pre-*Miranda* statements should be suppressed.

**{¶18}** We review a motion to suppress under a blended standard of review. *See In re J.T.*, 2023-Ohio-2695, ¶ 15-16 (1st Dist.). Under this standard, we accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* at ¶ 15. We then review de novo whether the facts meet the applicable legal standard. *Id.*

**{¶19}** Thomas first argues that officers lost the authority to search his car once they learned that the gun Brown saw in the back seat was a pellet gun. He contends that the concern for officer safety evaporated when officers made the discovery that

5

the item was not in fact dangerous. Thomas is incorrect.

**{¶20}** "In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court recognized an exception to the warrant requirement permitting a limited protective search of an automobile during a traffic stop." *State v. Jones*, 2014-Ohio-1201, ¶ 18 (1st Dist.). "Following *Long*, we have held that, where there has been no arrest and the suspect will be permitted to return to his vehicle once the investigation is complete, an officer acts reasonably when, out of a concern for his safety, the vehicle is searched for weapons prior to allowing its occupants to reenter." (Cleaned up.) *Id.* at ¶ 19. "When considering the constitutionality of a protective sweep, courts must determine whether an officer has a reasonable suspicion that an individual is armed based on the totality of the circumstances." (Cleaned up.) *State v. Williams*, 2024 Ohio App. LEXIS 1009, *4 (1st Dist. Mar. 22, 2024). Thus, where a driver has been removed from a vehicle for officer safety, police may conduct a limited search of the open areas of the vehicle for weapons before returning the driver to the car. *See, e.g., State v. Carr*, 2011-Ohio-2016, ¶ 31 (2d Dist.).

**{¶21}** Thomas concedes that officers had a valid basis for removing him from his vehicle based on Brown's observation. But he maintains that once the status of the pellet gun was known, officers were required to return him to his car without further action to ensure the officers' safety. The Fourth Amendment does not require such limited action on the part of police.

**{¶22}** The automobile exception clearly allows limited sweeps of vehicles for weapons before drivers are returned to them to ensure that police are kept safe at the conclusion of traffic stops. *See id.* at ¶ 31. Officers can search a car for weapons when they are reasonably suspicious that an individual is armed. *Williams* at *4. This is necessarily a contextual and individualized inquiry. Here, Thomas made a furtive

gesture towards a hidden item in the vehicle while mentioning bullets. Officers were threatened enough in the moment that they immediately removed Thomas from his car and placed him in handcuffs. Given the particular circumstances of this case and these facts, concerns for officer safety justified a protective search of the car. *See Jones* at ¶ 19.

**{¶23}** Because the automobile exception under *Long*, 463 U.S. 1032, applies in this case, Thomas's arguments challenging other potential justifications for the search are moot. We decline to consider whether the smell of marijuana or Thomas's un-*Mirandized* admission would have supported the officers' actions.

**{¶24}** Thomas's first assignment of error is overruled.

### *Ineffective Assistance of Counsel*

**{¶25}** In his second assignment of error, Thomas contends that he received the ineffective assistance of counsel in violation of his Sixth Amendment rights. More specifically, he argues that his counsel acted deficiently by failing to file a motion to dismiss under *Bruen*, 597 U.S. 1. He argues that it was possible that he would have been successful in having his charges dismissed, since at least one trial judge in Hamilton County had granted *Bruen* motions around the time of his no-contest plea.

**{¶26}** To succeed on a claim of ineffective assistance of counsel, Thomas must show that (1) trial counsel's performance was deficient, and (2) the deficient performance deprived him of a fair trial. *State v. Akins*, 2024-Ohio-1491, ¶ 45 (1st Dist.). An appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *Id.* "To prevail on an ineffective assistance of counsel claim regarding an omission by counsel, a convicted defendant must show that the omission was not the result of reasonable professional judgment and was outside the wide range of professionally competent assistance." (Cleaned up.) *City of Akron v.*

7

*Buchwald*, 2003-Ohio-5044, ¶ 12 (9th Dist.). "[T]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989).

**{¶27}** Thomas does not mount an argument that he had a reasonable probability of prevailing on a motion to dismiss under *Bruen*. Rather, he merely contends that it was possible that such a motion would have been successful. But a possibility is not a probability.

**{¶28}** In assessing ineffective assistance under *Strickland*, courts look to the status of the law at the time of the alleged deficiency by defense counsel. *See State v. Johnson*, 2024-Ohio-1163, ¶ 32 (8th Dist.). At the time Thomas pleaded no contest, the Supreme Court had decided *Bruen* and a companion case, *United States v. Rahimi*, 602 U.S. 680 (2024). But no appellate court in Ohio had determined that any of the statutes under which Thomas was charged were unconstitutional on Second Amendment grounds. Thus, no authority compelled the result Thomas now seeks.

**{¶29}** Given the changing landscape of the law in this area, it would have been advisable for Thomas's trial counsel to preserve the *Bruen* issue. Nonetheless, we cannot say on this record, in the absence of Thomas arguing so himself, that there was a reasonable probability that the outcome of his case would have been different had his attorney moved to dismiss the charges against him. Thomas only argues that it was possible that he would have prevailed, and the *Strickland* standard for ineffective assistance of counsel requires a higher showing. Thomas's second assignment of error is accordingly overruled.

### Conclusion

**{¶30}** We overrule Thomas's first and second assignments of error and affirm

the judgment of the trial court.

Judgment affirmed.

**BOCK** and **NESTOR, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.