[Cite as *State v. Blanton*, 2025-Ohio-1192.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240004 |
| | | C-240070 |
| Plaintiff-Appellee, | : | TRIAL NO. B-2301819 |
| vs. | : | |
| NICHOLAS BLANTON, | : | *O P I N I O N* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: April 4, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

**{¶1}** In these consolidated appeals, defendant-appellant Nicholas Blanton appeals his convictions, following a jury trial, of two counts of rape and one count of gross sexual imposition and the trial court's judgment denying his motion for a new trial. Raising seven assignments of error, Blanton challenges the admissibility of certain recorded statements at trial, the sufficiency of the evidence supporting his convictions, and whether he received the effective assistance of counsel at trial. Blanton also argues that the trial court improperly sentenced him to life in prison on the rape counts and that it abused its discretion in denying his Crim.R. 33 motion for a new trial.

**{¶2}** After a careful review of the record, we overrule Blanton's assignments of error and affirm the trial court's judgments.

### *Factual and Procedural History*

**{¶3}** On April 27, 2023, Blanton was indicted, in Count 1, for rape of a child under the age of ten by anal intercourse in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; in Count 2, for rape of a child under the age of ten by vaginal intercourse in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; in Count 3, for rape of a child under the age of ten by penetration in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; and in Count 4, for gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree.

**{¶4}** Blanton invoked his right to a jury trial, and the matter proceeded to trial before the jury on October 30, 2023. The State called five witnesses: (1) the child who was identified in the indictment; (2) Emily Harman; (3) Kenya Lewis; (4) Detective Joseph Ruwe; and (5) Dr. Kathi Makoroff.

**{¶5}** The testimony at trial pertained to an event that occurred on the night

before Easter in 2023 at the child's home, where she lived with her mother, four siblings, her aunt, and Blanton. The child was eight years old at the time.

{¶6} The child testified that, on the night in question, she was at home alone with Blanton while her mother was at work. She went into the room that Blanton and her mother shared to watch television and to help with her newborn sibling. She took her stuffed animal, named Aurora, with her. The child testified that she was lying in the bed on her stomach watching the Netflix show "Wednesday" and that Blanton was lying on the bed behind her. She was wearing a loose jumpsuit with shorts, and Blanton was wearing a t-shirt and shorts.

{¶7} According to the child, Blanton asked her to push on his hands with her feet while she was lying in bed. While doing this, she felt something wet, although it was too dark for her to see what she was doing. She stopped pushing when her mother called them on FaceTime.

{¶8} The child testified that Blanton's conduct resumed after the FaceTime call with her mother ended. At that point, according to the child, Blanton forced her stuffed animal into her shorts. The child explained that she felt the stuffed animal "on" and "in" her "butt," which felt "wet" and "hurt." She described this happening for, what felt like to her, a long time. She stated that what Blanton did to her was painful.

{¶9} The child testified that she went to an Easter egg hunt the next day and did not disclose what happened because she did not think anyone would believe her. She ended up telling her mother a few days later and was taken to the hospital. She testified that she was still hurting at that point.

{¶10} Emily Harman, a social worker and forensic interviewer at the Cincinnati Children's Hospital Medical Center ("Cincinnati Children's") Mayerson

3

Center for Safe and Healthy Children ("Mayerson"), testified that she interviewed the child. During the interview, the child identified on a drawing which parts of her body were in pain, including her vaginal and rectal areas. Harman also identified the child's recorded Mayerson interview, which was played for the jury without objection.

{¶11} In the recorded interview, the child explained that she had been watching television with Blanton in his bed. She told Harman that she usually wears jean shorts around Blanton, but on that night, he told her to change and picked out a unicorn jumpsuit for her to wear because it was soft. According to the child, Blanton asked her to turn the lights off, and when she turned around to do so, she saw his "thing," and it scared her. Blanton also turned the television off and then got behind her, asking her to help "pop" his fingers with her feet. The child explained that when she was using her feet, she felt something wet and hairy, which felt "weird." The child also described Blanton's penis as hairy and bumpy. She explained that she kept feeling something that was wet, hairy, and round. She stated that he stopped when her mother called.

{¶12} The child further expressed in the interview that she felt an object go "up [her] butt" and that she felt Blanton moving around at that time. The child also explained that her private parts were hurting, burning, and itching following that interaction. She also stated that, at one point, Blanton laid on her back and placed his chin on the back of her head, and she could feel his chest and "thing." She described that when he was on his back, he also was pushing himself up. The child explained that she cleaned her stuffed animal after the incident because it smelled like Blanton.

{¶13} Kenya Lewis, the health service administrator for NaphCare at the Hamilton County Justice Center, testified that Blanton's urine was collected to be tested for chlamydia and gonorrhea and that the test revealed a positive result for

chlamydia trachomatis. On cross-examination, Lewis was unable to identify when Blanton contracted the infection.

{¶14} Delhi Police Detective Joseph Ruwe testified that the morning after the the child was interviewed by Harman, he received a call that the child tested positive for chlamydia. After receiving that information, Ruwe explained that he contacted Blanton, who came to the police station for questioning. Blanton consented to a recorded interview, which was admitted and played for the jury, subject to certain redactions.

{¶15} In the unredacted portions of the recording, Blanton explained that he had previously injured his hand, which requires his knuckles to be "popped." He admitted that he did ask the child to "pop" his fingers with her feet. He also admitted to asking the child to change her clothes because she had been wearing the same outfit all day. He further conceded that he inserted the child's stuffed animal inside her jumpsuit but denied penetrating her anal cavity with the toy. Blanton admitted lying on the child's back but denied inappropriately touching her. When asked why the child felt something wet, Blanton suggested that he had recently washed his hair and had used hair gel.

{¶16} During the interview, Blanton disclosed that he had contracted chlamydia five years ago, but had not been infected since then. He voluntarily provided a urine sample for testing.

{¶17} The recording also revealed that officers questioned Blanton about the presence of pornography on his cell phone. He denied possessing child pornography, but admitted to looking at adult-oriented sexually explicit material on his phone. He permitted the officers to review his cell phone. Blanton was arrested for rape at the conclusion of the interview.

{¶18} Dr. Kathi Makoroff, a pediatric specialist with Cincinnati Children's, testified that she performed a general physical and genital exam on the child, as well as urine testing, based on the child's report during the Mayerson interview that her vaginal and rectal areas were in pain. According to Makoroff, the child tested positive for chlamydia.

{¶19} Makoroff explained the characteristics of chlamydia. In general, it is a sexually-transmitted disease that infects either the vagina or the anus. While newborns can contract chlamydia at birth if the mother is infected, these infections generally do not last past age two-and-a-half, as children typically receive antibiotics for other illnesses during that age period that also treat chlamydia. Because the child was eight, Makoroff did not consider the origin of her infection to be her birth.

{¶20} Makoroff explained that chlamydia is largely transmitted through close sexual contact. The infection does not live long outside of the body, as air and surface temperatue tend to quickly kill it. As a result, according to Makoroff, chlamydia typically cannot be transferred from a toilet seat or by an object touching the genital area.

{¶21} With regard to her physical examination of the child, Makoroff observed both unusual discharge and redness in the child's vaginal area, but saw no tearing. She explained that children who have experienced sexual abuse tend to have normal physical examinations because the tissue in the genital and rectal area can heal relatively quickly. Makoroff concluded that the child had been sexually abused because the child had chlamydia and there was no other explanation for the infection.

{¶22} On cross-examination, Makoroff agreed that, because of its incubation period, chlamydia's symptoms sometimes do not appear for 24 hours after a person is infected. Makoroff also agreed that chlamydia can migrate between the rectum and

the vagina. She further conceded that chlamydia, for an unknown period of time, can live on a damp, warm towel, which has a similar temperature as the human body.

{¶23} Following Makoroff's testimony, the State rested. Defense counsel moved for an acquittal under Crim.R. 29, which was denied.

{¶24} The defense called two witnesses to testify, A.B. and M.B. A.B. is Blanton's sister. She testified that she was with the child and Blanton at the Easter egg hunt the day after the incident. According to A.B., the child was behaving normally in Blanton's presence, even hopping on Blanton's knee that day. M.B. is Blanton's mother. M.B. shared that Blanton had taken on a fatherly role to the child and her siblings despite not being their biological parent. M.B. testified that Blanton had never acted inappropriately with any child. Like A.B., she also observed the child at the Easter egg hunt and considered her to be acting normally. She additionally saw the child sitting on Blanton's leg at the event.

{¶25} Following M.B.'s testimony, the defense rested its case and again moved for an acquittal under Crim.R. 29. The trial court denied the motion.

{¶26} On November 7, 2023, the jury found Blanton guilty of two counts of rape (Counts 1 and 3) and gross sexual imposition. The jury acquitted Blanton of the rape charged in Count 2.

{¶27} On December 11, 2023, the trial court sentenced Blanton to life without the possibility of parole on Counts 1 and 3 and 36 months on Count 4 to be served concurrently in the Ohio Department of Rehabilitation and Correction. Should Blanton be released from prison, the trial court placed him on five years of postrelease control. The trial court also designated Blanton a Tier III sex offender.

{¶28} On December 27, 2023, Blanton filed a motion for a new trial pursuant to Crim.R. 33(A). In the motion, defense counsel asserted that, six days earlier, he had

been contacted by T.T., a man who dated the child's mother after Blanton. T.T. was no longer in a relationship with the child's mother. On December 26, 2023, T.T. executed an affidavit indicating that he had overheard statements made by the child and her mother suggesting that the child's mother coached the child to lie about the rape. In his motion, Blanton argued that T.T.'s testimony was newly discovered evidence that undermined confidence in the jury's verdict.

**{¶29}** The State did not respond to Blanton's Crim.R. 33(A) motion.

**{¶30}** On January 24, 2024, the trial court conducted a hearing on Blanton's motion for a new trial. At the hearing, defense counsel argued that the motion was timely because T.T. approached defense counsel, indicating that he had become aware of Blanton's convictions and had relevant information to share about Blanton's case, and because defense counsel submitted the motion within days of being contacted by T.T.

**{¶31}** In response, the State argued that T.T.'s testimony was not newly discovered because Blanton was in contact with T.T. prior to trial. More specifically, the prosecutor contended that Blanton had spoken to T.T. while Blanton was detained before trial through a jail communication system called Securus. No witness testified about Securus or Blanton's communications with T.T.

**{¶32}** The trial court denied Blanton's motion for a new trial. In doing so, it found that Blanton had been in contact with T.T. through the jail's Securus system prior to trial and that Blanton could have asked T.T. what favorable information he had to offer at that time. The trial court further found T.T.'s affidavit to be unreliable given that he had been the child's mother's boyfriend. In addition, the trial court concluded that, even if T.T.'s affidavit was believable, he essentially proffered hearsay statements from the child and her mother that would be inadmissible at trial.

**{¶33}** Blanton now appeals.

## *Analysis*

**{¶34}** Blanton raises seven assignments of error for our review. First, Blanton argues that he was prejudiced by the admission of his recorded police interview, which he alleges contained irrelevant and unfairly prejudicial statements in violation of Evid.R. 402 and 403(B). Second, he argues that his conviction for rape in Count 1 was not supported by sufficient evidence of anal penetration. Third, he asserts a similar argument with regard to vaginal penetration in attacking the sufficiency of the evidence supporting the charge of rape in Count 3. Fourth, he challenges the sufficiency of the evidence supporting his conviction for gross sexual imposition. Fifth, Blanton asserts that he received ineffective assistance of counsel. Sixth, he argues that the trial court erred by imposing a sentence of life without the possibility of parole in violation of his constitutional right against cruel and unusual punishment. Lastly, Blanton argues that the trial court erred by denying his motion for a new trial.

**{¶35}** None of Blanton's assignments of error have merit. We accordingly reject his arguments and affirm his convictions and sentence.

## *A. Recorded Statements*

**{¶36}** In his first assignment of error, Blanton argues that the trial court erred when it permitted the jury to hear certain parts of his recorded interview with police. More specifically, Blanton takes issue with the admission of six specific statements he made during his interview with police: (1) that a "friend had a situation where his daughter had vaginal ripping. Me and [the daughter's mother] took custody of the kid. I was a felon at the time"; (2) "My money for probation is sitting in the driveway"; (3) "I smoke medical marijuana every day"; (4) "I have dated girls with kids before. I have never had an issue with kids before – I have never been claimed to be nothing. The

worst I got is that TPO"; (5) "I got porn on my phone"; and (6) "I have had chlamydia." Blanton argues the statements were irrelevant under Evid.R. 402 and unduly prejudicial under Evid.R. 403(B) and should therefore have been excluded.

**{¶37}** Blanton failed to object to the admission of the challenged statements below; therefore, we apply a plain-error review. *Carlson v. City of Cincinnati*, 2020-Ohio-4685, ¶ 33 (1st Dist.). Plain error must satisfy three limitations set forth in Crim.R. 52(B). *State v. Garrett*, 2022-Ohio-4218, ¶ 63. First, an error, meaning a deviation from a legal rule, must have occurred. *Id.* Second, the error must be plain, in that there must be an obvious defect in the trial proceedings. *Id.* Third, the error must have affected substantial rights, meaning that "the trial court's error must have affected the outcome of the trial." *Id.*

**{¶38}** As a general principle, evidence must be relevant to be admissible. *See* Evid.R. 402. And, pursuant to Evid.R. 403(B), evidence "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

**{¶39}** The admission of the challenged statements in the recorded interview did not constitute plain error. Even if the trial court's admission of the challenged statements constituted an obvious legal defect—and we do not believe it did, there is no evidence that Blanton's statements impacted the outcome of the trial as required to satisfy the plain-error standard. *See Garrett* at ¶ 63. After all, the jury acquitted Blanton of Count 2, in which he was accused of vaginal rape. If Blanton's admissions in his recorded interview had in fact prejudiced the jury against him, the jury would not have acquitted him of this count.

**{¶40}** Regardless of these admitted statements, the remaining evidence against Blanton was overwhelming. The chlamydia test results were particularly

damning in terms of proving that Blanton engaged in sexual conduct with the child. Moreover, Blanton essentially corroborated the child's account during his interview, admitting to all but the sexual activity. And Blanton's statements were not a focus at trial. Other than playing the recording of Blanton's interview, the State did not question any witness about Blanton's status as a felon, his term of probation, the existence of a temporary protection order against him, his use of marijuana, or the presence of pornography on his cell phone. As a result, the information was not of such a prejudicial character that it would have influenced the jury's verdict. *See, e.g., State v. McAlpin*, 2022-Ohio-1567, ¶ 140 (finding that search for pornographic websites was not prejudicial in light of overwhelming evidence of guilt).

**{¶41}** Therefore, the admission of the challenged statements did not rise to the level of plain error, because their introduction did not affect the outcome of the trial. We accordingly overrule Blanton's first assignment of error.

### B. Sufficiency of the Evidence

**{¶42}** Blanton's second, third, and fourth assignments of error contend that his convictions were based on insufficient evidence. Given their common legal basis, we address these assignments of error together.

**{¶43}** To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.).

#### 1. Count 1: Rape

**{¶44}** In his second assignment of error, Blanton argues that the evidence presented at trial was insufficient to prove that he violated R.C. 2907.02(A)(1)(b).

More specifically, Blanton argues that the State failed to prove that the child was anally penetrated because she never testified that Blanton's penis entered her rectum.

**{¶45}** Blanton was charged in Count 1 with raping the child by anal penetration. R.C. 2907.02(A)(1)(b) provides: "No person shall engage in sexual conduct with another when any of the following applies: . . . The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Relevant to Count 1, R.C. 2907.01(A) defines sexual conduct as "anal intercourse . . . without privilege to do so, [or] the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete . . . anal intercourse."

**{¶46}** The evidence presented at trial established that the child, who was eight years old at the time, was anally penetrated by either Blanton's penis or an object. In her own words, the child described feeling something "in [her] butt" after Blanton inserted her stuffed animal inside her clothing from behind and testified that she felt pain from this encounter. She also testified that Blanton laid on top of her, that she felt something wet and hairy behind her, and that she felt Blanton moving. According to Lewis and Makoroff, the child contracted the same sexually-transmitted disease that Blanton had.

**{¶47}** This evidence was more than sufficient to establish that Blanton engaged in sexual conduct with the child as defined in R.C. 2907.01(A) and as prohibited by R.C. 2907.01(A)(1)(b). We therefore overrule Blanton's second assignment of error.

### 2. Count 3: Rape

**{¶48}** In his third assignment of error, Blanton argues that the State failed to

present sufficient evidence of vaginal penetration. Regarding this count, Blanton was charged with violating R.C. 2907.02(A)(1)(b) by penetration. Neither R.C. 2907.02(A)(1)(b) nor R.C. 2907.01(A), the statute that defines sexual conduct, requires specific proof that the penetration be vaginal in nature in order to constitute the offense of rape. To the contrary, R.C. 2907.01(A) defines sexual conduct to include vaginal or anal penetration, either by intercourse or by insertion of an instrument, apparatus, or object into the vaginal or anal opening.[1] Thus, as charged in the indictment, to convict Blanton of Count 3, the State was required to present sufficient evidence that the victim was penetrated either vaginally or anally.

{¶49} The State argued in closing arguments that it met this burden by presenting evidence from which the jury could infer that vaginal penetration occurred. It appears the jury rejected this contention, because the jury acquitted Blanton of Count 2, which specifically charged Blanton with vaginally raping the child. But the State's closing arguments did not foreclose the jury from considering whether Blanton committed the offense charged in Count 3 by anally penetrating the child. As we have already observed, sufficient evidence supported the jury's determination that he did in fact engage in this form of sexual conduct.

{¶50} Because R.C. 2907.01(A) permits sexual conduct to be established by either vaginal or anal penetration, and because the State presented sufficient evidence of the latter, we overrule Blanton's third assignment of error.

### 3. Count 4: Gross Sexual Imposition

{¶51} In his fourth assignment of error, Blanton argues that the State

---

[1] R.C. 2907.01(A) also includes fellatio and cunnilingus in the definition of sexual conduct. Blanton was not charged with this conduct.

presented insufficient evidence of sexual contact to support his conviction for gross sexual imposition under R.C. 2907.05(A)(4). More specifically, Blanton alleges a lack of proof that the child's stuffed animal made contact with her buttocks.

{¶52} To convict a person of gross sexual imposition, the State must prove that the accused engaged in sexual contact with another person. *See* R.C. 2907.05(A)(4). R.C. 2907.01 defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶53} At trial, the child testified that Blanton forced her stuffed animal toy inside her clothing, placing it "on" and "in" her "butt." She repeated similar statements in the Mayerson interview that was played for the jury. In his interview with police, Blanton admitted that he did in fact insert the child's toy into her shorts.

{¶54} Blanton takes issue with the lack of specificity as to what anatomical areas of the child the stuffed animal toy contacted. We think that the child's description of the stuffed animal making contact with her "butt" under Blanton's control is sufficient to indicate that the toy touched her buttocks. Nonetheless, even if the word "butt" is not perfectly synonymous with the word "buttocks," the definition of sexual contact is not limited simply to that part of the body. As the statute explains, sexual contact can occur with the thigh, genitals, buttock, or pubic region. By Blanton's own admission, the toy would have, at a minimum, touched the child's thigh as he forced it into her shorts.

{¶55} Sufficient evidence of sexual contact supported Blanton's conviction for gross sexual imposition. We therefore overrule Blanton's fourth assignment of error.

### C. Ineffective Assistance of Counsel

{¶56} In his fifth assignment of error, Blanton argues that he received

ineffective assistance of counsel at trial because his attorney did not object to the admission of the challenged statements in Blanton's recorded interview.

**{¶57}** To succeed on a claim of ineffective assistance of counsel, Blanton must meet the *Strickland* test, which requires a showing that (1) trial counsel's performance was deficient, and (2) the deficient performance deprived him of a fair trial. *State v. Akins*, 2024-Ohio-1491, ¶ 45 (1st Dist.). An appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *Id.* "[T]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989).

**{¶58}** Blanton cannot demonstrate the prejudice prong of the *Strickland* standard, as there is no reasonable probability that the jury would have acquitted him had his defense attorney simply objected to the challenged statements. As we have previously explained, the statements themselves did not change the outcome of the trial. To the contrary, even with the full recorded interview in evidence, the jury still acquitted Blanton of the serious charge of rape by vaginal intercourse. This demonstrates the jury's ability to dispassionately hear the evidence and impartially consider the charges, even with an awareness of Blanton's admissions. Moreover, as the State points out, the statements made by Blanton were not entirely damaging to him. In one of the statements, he admitted to taking in a child to help a friend, and in another, he painted his history as being free of accusations of child molestation. Thus, there is simply no evidence that defense counsel's failure to object to the challenged statements made the difference between a guilty and a not-guilty verdict. *See, e.g., State v. Hanley*, 1995 Ohio App. LEXIS 1565, *6 (8th Dist.) (holding that failure to

15

object to social worker's testimony about child-victim's statements was not prejudicial under *Strickland*, where outcome of the trial would not have been different).

**{¶59}** As Blanton cannot demonstrate the prejudice required to satisfy *Strickland*, we overrule his fifth assignment of error.

### D. Sentence of Life Imprisonment

**{¶60}** In his sixth assignment of error, Blanton argues that the trial court violated his constitutional right to be free from cruel and unusual punishment by sentencing him to life in prison without the possibility of parole on each of the two rape counts for which he was found guilty. Blanton did not challenge the constitutionality of his sentences below. Thus, we review this issue for plain error. *See Garrett*, 2022-Ohio-4218, at ¶ 63.

**{¶61}** "Generally, if a sentence falls within the terms of a valid statute, it cannot amount to cruel and unusual punishment. Outside the death penalty context, the Eighth Amendment does not require strict proportionality between crime and sentence but forbids only extreme sentences that are grossly disproportionate to the crime." (Cleaned up.) *State v. Kidd*, 2021 Ohio App. LEXIS 3803, *24 (1st Dist. Oct. 29, 2021).

**{¶62}** In *Kidd*, we rejected the argument Blanton raises now. *Id.* at *25. In that case, we joined our sister courts in holding that life without the possibility of parole is not unconstitutionally disproportionate for the rape of child under the age of ten. *Id.* at *25.

**{¶63}** Following *Kidd*, we overrule Blanton's sixth assignment of error.

### E. Motion for a New Trial

**{¶64}** In his seventh assignment of error, Blanton argues that the trial court erred in denying his motion for a new trial.

16

**{¶65}** "We review the trial court's ruling on a Crim.R. 33 motion for a new trial for an abuse of discretion. An abuse of discretion implies that the court's attitude [was] unreasonable, arbitrary or unconscionable." (Cleaned up.) *State v. Jones*, 2024-Ohio-5896, ¶ 17 (1st Dist.).

**{¶66}** Crim.R. 33(A)(6) permits motions for new trials based on newly discovered evidence that the defendant could not have with reasonable diligence discovered and produced at trial. Crim.R. 33 plainly contemplates that new-trial motions will be resolved by way of a hearing. *State v. Gaines*, 2010-Ohio-895, ¶ 4 (1st Dist.). But whether that hearing is evidentiary in nature is up to the sound discretion of the trial court. *Id.*; *Ohio v. Chambers*, 2021-Ohio-3388, ¶ 24 (4th Dist.) (cataloging cases from Second, Fourth, Eighth, Ninth, and Tenth Districts finding abuse of discretion to be the standard of review for the trial court's decision to conduct an evidentiary hearing on a Crim.R. 33 motion).

**{¶67}** To prevail on a Crim.R. 33(A)(6) new-trial motion, a defendant must establish that newly discovered evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) could not have been discovered in the exercise of due diligence before trial, (4) is material, (5) is not merely cumulative to the former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

**{¶68}** In determining the credibility of any affidavits submitted as new evidence, trial courts consider:

(1) whether the judge reviewing the [new-trial motion] also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person,

(3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, . . . (5) whether the affidavits contradict evidence proffered by the defense at trial, (6) whether the affidavits are contradicted by the trial testimony of the affiants, and (7) whether the affidavits are internally inconsistent.

*Gaines* at ¶ 25.

**{¶69}** The trial court denied Blanton's Crim.R. 33 motion without an evidentiary hearing because it determined T.T.'s affidavit lacked credibility and because the affidavit relied on hearsay. In doing so, the trial court relied, in part, on the prosecutor's assertion that Blanton and T.T. had been in communication before trial through the jail's Securus system. But no facts in evidence supported this conclusion; rather, the prosecutor merely argued the connection to the judge. But an attorney's arguments are not themselves evidence. *State v. Palmer*, 80 Ohio St.3d 543, 562 (1997). And neither the Crim.R. 33(A)(6) standards, nor the factors for assessing the credibility of affidavits supporting new-trial motions, direct the trial court to consider the arguments of counsel as evidence weighing for or against the motion. *See Petro* at syllabus; *Gaines*, 2010-Ohio-895, at ¶ 25 (1st Dist.). Thus, to the extent the trial court made a credibility determination based on facts not in evidence, the trial court may have abused its discretion.

**{¶70}** But that potential error is insufficient to warrant reversing the trial court's decision, because independent grounds exist for denying Blanton's new-trial motion. In that regard, T.T.'s affidavit clearly contains hearsay, and the trial court did not abuse its discretion in making that determination on the face of the affidavit itself. In fact, case law directs the trial court to consider the inclusion of hearsay in

18

determining whether an affidavit accompanying a Crim.R. 33 motion warrants a new trial. *See Gaines* at ¶ 25.

**{¶71}** Moreover, while not directly stated by the trial court, T.T.'s affidavit does not create a strong probability that the result of a new trial would be different. The child's positive chlamydia test is difficult evidence to overcome, even if a jury were to believe that the child's mother coached her in some way. Thus, given that T.T.'s affidavit fails to change the outcome, the trial court did not abuse its discretion in denying Blanton's new trial motion.

**{¶72}** Therefore, we overrule Blanton's seventh assignment of error.

### *Conclusion*

**{¶73}** We see no error in the admission of Blanton's recorded police interview, the sufficiency of the evidence presented at trial to support Blanton's convictions, the effective assistance of Blanton's trial counsel, the sentence imposed for Blanton's rape convictions, and the trial court's denial of Blanton's new-trial motion. We accordingly overrule Blanton's assignments of error and affirm his convictions.

Judgments affirmed.

**CROUSE** and **ZAYAS, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.